## Imperial Cardiff Coal Company Appeal.

Argued October 3, 1944. Before KELLER, P. J., BALD-RIDGE, RHODES, HIRT, RENO and JAMES, JJ.

*Russell R. Yost,* with him *Graham, Yost, Meyers & Graham,* for appellant.

*Paul D. Larimer,* with him *George M. Spence, Engle-hart & Larimer* and *Shettig & Swope,* for appellee.

OPINION BY RENO, J., December 13, 1944:

On April 20, 1943, the commissioners of Cambria County petitioned the court below under the Act of May 21, 1937, P. L. 787, as amended by the Act of July 29, 1941, P. L. 600, 72 PS §5878a et seq., for the approval of a private sale to John U. and Fred J. McFadden of two tracts of land in Blacklick Township assessed in the name of Charles V. Bergh Estate which had been purchased by the county in 1938 at a sale for nonpayment of taxes and which had not been redeemed prior to the expiration of the right of redemption. Imperial Cardiff Coal Company, appellant, filed objec-

tions to the petition which were dismissed after a hearing, and a decree was entered approving the sale on the terms proposed. This appeal followed.

The two parcels of land, hereinafter called the Bergh tracts, were adjacent to a coal mine known as Commercial No. 5, at one time owned and operated by the Commercial Coal Mining Company. Prior to April, 1942, the Commercial Coal Mining Company was adjudicated a bankrupt, and claims for delinquent taxes for county, school and road purposes had been filed against the bankrupt estate by the county authorities, who were asserting a tax lien against certain of the properties in the hands of the trustee. At that time John U. and Fred J. McFadden were negotiating for the purchase from the trustee of the substation of the No. 5 mine and the ground upon which it was erected, an eleven acre vein of "B" coal, and some mining equipment and improvements owned by the bankrupt but located on the Bergh tracts. The equipment and improvements included a motor barn, a blacksmith shop, and a track from the drift mouth of the mine to the railroad siding, which track had been used for the transportation of coal by the bankrupt and others for many years. Because of the outstanding tax claims and the lien asserted against the property sought by the McFaddens, it was impossible for them to come to terms with the trustee. Thereupon, an arrangement was agreed upon among the McFaddens, the trustee, and the taxing authorities whereby, in consideration of the personal assumption by the McFaddens of the delinquent taxes owed by the Commercial Coal Mining Company, the taxing authorities withdrew all their claims against the bankrupt estate and discharged the trustee from further responsibility for them. As the value of the Commercial No. 5 mine to the McFaddens would have been greatly impaired unless the buildings and equipment on the Bergh tracts continued to be

available for use in conjunction with the mining operation, the taxing authorities also agreed as part of the plan that the Bergh tracts, if unredeemed, would be sold to the McFaddens, in settlement of the deficiencies in the taxes assessed against those lands, when the period of redemption expired. The McFaddens then concluded their agreement with the trustee and paid him $12,500 for the property described. They also paid the county $2,423.79, the amount by which the bankrupt had become in arrears in its taxes, and entered upon and reopened the Commercial No. 5 mine.

When the redemption period of the Bergh tracts expired, unpaid taxes and costs had accrued against them in the amount of $1,418.03. The McFaddens made an offer of $440.85 for the land, and this amount was acceptable to the school board and the supervisors of Blacklick Township and the county commissioners. After the petition had been presented to the court and the date of the hearing advertised as required by the Act, appellant offered, and in filing its objections to the petition renewed the offer, to purchase the tracts for $800. It was testified by a representative of the commissioners that the motive impelling the county in 1942 to make the agreement with the McFaddens concerning the Bergh tracts was a desire to have the Commercial No. 5 mine reopened so as to provide local employment for the inhabitants of Blacklick Township and the nearby area. At that time local properties were beginning to depreciate because of lack of work in the vicinity and those persons who were employed were required to travel to other localities for their livelihood, and this was a matter of deep public concern. It was not contradicted that the mine was reopened and at the time of the hearing was being operated as a going concern providing employment for forty-five miners, and it was a consideration of the benefits received by the community as a result of the

arrangement which led the court below to approve the sale to the McFaddens notwithstanding appellant's offer of a higher price.

The Act of 1937 as amended by the Act of 1941, after granting to municipalities, including counties, authority to dispose of unredeemed lands purchased at tax sales by private sales subject to the approval of the court of common pleas upon petition and hearing, provides in §4: "If, after such hearing, the court is satisfied that the proposed ...... private sale is proper and to the advantage of all the taxing authorities interested, it shall enter a decree approving such ...... private sale or such other settlement as the court may find to be proper, and directing a conveyance of such property to the person or persons with whom the agreement has been made, upon the payment of the agreement amount or such amount as the court may approve, and all costs of the proceeding ...... " Appellant's sole contention presents the question whether the court below has committed a manifest abuse of the discretion lodged in it by the statute by approving the private sale to the McFaddens under the circumstances presented by this record and in the face of a substantially higher bid by outside parties.

It should be noted that the statute does not prohibit the approval of a sale at a figure less than the highest possible price that could be obtained by the municipality, and such a provision should not be written into the Act by construction. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning": *F.-K. Market House Co., Inc., v. Reading,* 310 Pa. 493, 498, 165 A. 398. Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551. The criterion by which the court is to gauge the merits of a

proposed sale is not established as the largest sum which the property will bring, but rather whether the prospective terms of sale "satisfy" that court that the bargain is "proper and to the advantage of all the taxing authorities interested." Therefore, it cannot be said as a matter of law that an outstanding higher bid makes the approval of a sale under the statute erroneous where other circumstances have successfully appealed to a sound judicial discretion.

The Act of 1937 and its amendments recognize as a fundamental principle that the interests of municipalities may at times be best served by a private rather than a public disposition of lands purchased at tax sales and unredeemed, and thus the authority is granted to dispose of such lands privately. Of the wide variety of benefits which the taxing authorities may receive from private negotiations, price is only one, and some degree of latitude must be allowed these officials, subject to the scrutiny of the court, in order that they may arrive at the most satisfactory solution to their local fiscal problems from the standpoint of all concerned. In this case, viewing all the dealings between the taxing bodies and the McFaddens, it appears that in 1942, when the tentative agreement to sell the Bergh tracts was first made, the county was faced with the immediate difficulty of collecting overdue taxes from the bankrupt estate of the Commercial Coal Mining Company and with the larger problems resulting from the scarcity of local employment. The effects of the first problem are obvious; and of the second it was thought at the time that the residents of the locality were at a distinct disadvantage and that the properties in the vicinity were being allowed to depreciate. Such considerations may certainly be a matter of legitimate official concern on the part of the taxing bodies, as they have a direct relationship to the success of the local tax collectors in raising revenue. The plan con-

ceived in 1942 was seen as a method of solving at least some of the difficulties, and as executed it did in fact have that effect, for the bankrupt's taxes were paid in full and the Commercial No. 5 mine was reopened and successfully operated to the benefit of the local inhabitants. In view of these results, it cannot be contended that the court below was in error when it approved the final step in the completion of the entire scheme as one which was to the advantage of all the interested taxing authorities. The plan as a whole, including the private sale to the McFaddens, plainly worked to the benefit of the taxing authorities, and the sum bid for the Bergh tracts by appellant was not so manifestly disproportionate to the amount offered by the McFaddens, considering the other benefits the county received by reason of their efforts, as to render an approval of the sale on the terms proposed an abuse of a discretionary authority.

Decree affirmed.