## Bell v. City of Philadelphia

Before MacNeille, P. J., and Mawhinney, J.

*Romain C. Hassrick*, for plaintiff.

*Morton Kline*, Assistant City Solicitor, and *Frank F. Truscott*, City Solicitor, for City of Philadelphia.

MAWHINNEY, J., April 20, 1951.—In this proceeding for a declaratory judgment we are considering a single important question of interpretation of the Amendment of May 2, 1949, P. L. 845, sec. 1, 53 PS §3514.1(*d*) to the Municipal Pension Act of May 20, 1915, P. L. 566, sec. 4.1.

Plaintiff, Robert H. Bell, was employed by the City of Philadelphia for 16 years and 24 days (February 19, 1934, to September 20, 1935, and February 7, 1936, to July 31, 1950), during which period he contributed $1,125.42 to the pension fund. On July 31, 1950, having attained the age of 60 years, plaintiff voluntarily retired. It is not disputed that plaintiff is entitled to a pension under the terms of the Pension Act, as amended, but the amount of the pension and the method of calculating it is in dispute. Plaintiff claims a pension of $151.11 per month; the city contends that plaintiff is entitled to a substantially smaller pension, which is not calculated and set forth in either its answer or brief.

Plaintiff's salary rates during his employment for the city were as indicated in the following table:

| From | To | Rate of Pay | Length of Service Yrs. | Mos. | Days |
|------|------|------|------|------|------|
| 2/19/34 | 9/20/35 | $2,100. | 1 | 7 | 1 |
| 2/ 7/36 | 2/ 8/40 | 2,700. | 4 | | 1 |
| 2/ 9/40 | 12/31/42 | 3,000. | 2 | 10 | 22 |
| 1/ 1/43 | 12/31/43 | 3,400. | 1 | | |
| 1/ 1/44 | 12/31/44 | 3,500. | 1 | | |
| 1/ 1/45 | 12/31/45 | 3,600. | 1 | | |
| 1/ 1/46 | 12/31/46 | 3,700. | 1 | | |
| 1/ 1/47 | 12/31/47 | 4,100. | 1 | | |
| 1/ 1/48 | 7/31/50 | 4,510. | 2 | 7 | |

The Act of May 20, 1915, supra, established a pension system for cities of the first class. Section 3 of the act, as amended by the Act of July 5, 1917, P. L. 689, sec. 1, 53 PS §3513, defines, inter alia, employe eligible for retirement as any person "of the age of sixty years and upwards, who shall have been so employed for a period of twenty years or more, . . ."

Section 4 of the Act of May 20, 1915, supra, as last amended by the Act of May 2, 1949, P. L. 852, sec. 1, 53 PS §3514, provides for computation of the pension as ". . . fifty per centum of the amount which would constitute the average rate of pay at which he or she was employed during the highest salaried five years of his or her employment by the said city, . . ."

Section 4.1 was supplied to the 1915 Act by amendment of May 2, 1949, P. L. 845, sec. 1, 53 PS §3514.1 providing for a lesser pension in the event of dismissal or retirement after 15 years' service. The pertinent provisions of this section are as follows:

"(a) Declares employe eligibility for a lesser pension if requirements of the section are otherwise met.

"(b) Makes eligible an employe with 15 years or more but less than 20 years of service and who has contributed to the pension fund for a like period and who has reached the age of 60 years or upwards.

"(c) Every employe in active service on or after the effective date of this act who is dismissed, voluntarily retired, or in any manner deprived of his position or employment after fifteen years or more but less than twenty years of service before attaining the age of sixty years, upon continuing until he reaches the age of sixty years a monthly payment to the fund equal to the last amount due and paid monthly while in active service, may apply for such lesser pension when he reaches the age of sixty years.

"(d) Every such lesser pension shall be proportionate to the pension which the employe would be entitled

to receive after twenty years of service and contribution, computed as if he had continued to receive, during the remainder of the twenty years, the same salary as at the time of the termination of his active service as his number of months of service is to two hundred forty months."

Plaintiff contends that the language of section 4.1 (*d*), supplied by the 1949 amendment, requires that his pension be computed "as if, he had continued to receive, during the remainder of the twenty years, the same salary as at the time of the termination of his active service", that the "highest salaried five years of his . . . employment" must be deemed to be at a salary of $4,510, i.e., the two years and seven months he actually worked for $4,510, and a balance of two years and five months during which he is presumed to have worked at the same salary.

Before we undertake the principal question it may be pertinent to briefly indicate the consequences of plaintiff's interpretation. If A were employed by the city for a period of 14 years at a salary of $2,000, and subsequently for a period of one year at a salary of $4,800, he could then retire and claim that his pension be computed as though he made $4,800 for a period of five years. His pension rate would then be ¾ (pro rata months of service) of $2,400 (50 percent of $4,800) or a yearly pension of $1,800. If the same employe completed 20 years of service at $2,000 per year and subsequently was employed at a salary of $4,800 for a period of one year, the pension computation would be as follows: One half of the highest average salary for five years, or a yearly pension of $1,280. We do not think the legislature intended so inequitable a result. Such a pension plan would reward and encourage retirement at the end of 15 years; it would encourage a temporary manipulation of employes into a more advantageous pension position.

Employment for one week, indeed one day, at the higher salary would alter the pension of an employe without regard to any actual sustained period of service to the city.

Plaintiff contends that the language of the statute is so plain and unambiguous that there is no necessity to resort to rules of statutory interpretation and construction; that where a statute has a plain and obvious meaning, a court, though convinced the legislature intended to enact something very different, must enforce the literal meaning of the words, citing Commonwealth ex rel. Cartwright v. Cartwright et al., 350 Pa. 638, 645-46 (1944); Imperial Cardiff Coal Company Appeal, 156 Pa. Superior Ct. 301, 305 (1944); Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551. We do not agree that the meaning of section 4.1(d), supplied by the amendment of 1949, is clear and self-sustaining without reference to the system there set up. In Endlich on Interpretation of Statutes, sec. 295, pages 399-400, that eminent jurist stated:

"Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. This is done, sometimes, by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction, that the Legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention. [The ascertainment of the latter is the

cardinal rule, or rather the end and object, of all construction; and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that design into effect, even though, in so doing, the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter . . .]". See also sections 264-267.

With a view to the foregoing it is clear that section 4.1($d$) does not indicate what "highest salaried five years" is referred to therein. The phrases "highest salaried five years" is imported from section 4 of the 1915 Act as amended (53 PS §3514) and as used in the latter section it obviously refers to actual employment. The language "of the amount which would constitute the average rate of pay at which he . . . was employed during the highest salaried five years of his . . . employment" in section 4 means, in context, "at which he . . . was *actually* employed during the *highest* salaried five years of his . . . *actual* employment". The benefit whereby a 15-year employe is permitted to qualify *as if* he were a 20-year employe does not extend the fictional employment for the balance of five years to a calculation of his pension entitlement. We believe the legislature intended to preserve to such lesser term employes their *proportionate* rights; it did not intend to comparatively increase or decrease them. In Retirement Board of Allegheny County v. McGovern et al., 316 Pa. 161, 168, 169 (1934), Mr. Justice (later Chief Justice) Kephart, stated:

"We said in Busser v. Snyder, 282 Pa. 440, 454, that the basis of retirement pay is neither charitable nor benevolent, but is the faithful, valuable service actually rendered over a long period of years. . . . A pension

is a bounty or a gratuity given for services that were rendered in the past."

We need not consider the distinction between "retirement pay" and "a pension"; it is sufficient to note that under plaintiff's interpretation of section 4.1 (*d*) his remuneration would be based in part on salaries he never actually received, and for a period he contributed nothing into the pension fund, as his fellow employes are required to do.

Finally and perhaps most important, were we to adopt the interpretation advanced by plaintiff we think we would be compelled to declare the result invalid on constitutional grounds. Article III, sec. 7, of the Pennsylvania Constitution provides, inter alia, as follows:

"The General Assembly shall not pass any local or special law: . . .

"Granting to any corporation, association or individual any special or exclusive privilege or immunity, . . ."

We do not think extended quotation or analysis is necessary to show that a pension system scheme as advanced by plaintiff would arbitrarily distinguish between city employes who have reached the age of 60 years and who have been employed for a period of 20 years or more and employes who have reached the age of 60 years and who have been employed for 15 years or more but less than 20 years. There would be neither a reasonable basis nor a need for such classification. See generally Ayars Appeal, 122 Pa. 266, 281 (1888) ; LaPlacca et ux. v. Philadelphia Rapid Transit Company, 265 Pa. 304, 308 (1919) ; Com. v. Puder, 261 Pa. 129, 135 (1918) ; Com. v. Casey, 231 Pa. 170, 179-80 (1911) ; Kurtz v. Pittsburgh et al., 346 Pa. 362 et seq. (1943). The rule is too familiar to require citation that we must, if possible, so construe an enactment of the legislature that its validity can be sustained.

It is not necessary to consider the city's further contentions that if plaintiff were allowed a pension as claimed, such action would also violate article III, secs. 11 and 18 of the Constitution, prohibiting, respectively, extra compensation to public employes for past services and prohibiting appropriations to private persons for charitable or benevolent purposes.

We therefore enter a declaratory judgment that plaintiff is entitled to a pension of that proportion which the number of months of his actual employment by the City of Philadelphia bears to 240 months of 50 percentum of the amount which represents the average rate of pay at which he was employed during the highest salaried five years of his actual employment by the City of Philadelphia.