## Swift *v.* Abington School District and Philadelphia Council for Community Advancement, Intervenor.

Argued October 2, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Eugene M. Schloss, Jr.,* with him *Rappeport, Magil, Schulman and Schloss,* for appellant.

*Charles B. Burr, II,* with him *Donald A. Gallager* and *Waters, Fleer, Cooper & Gallager,* for appellee.

*Richard Max Bockol,* with him *Goodis, Greenfield, Henry, Shaiman & Levin,* for intervenor.

OPINION BY JUDGE ROGERS, December 6, 1972:

This is an appeal from a final decree of the Court of Common Pleas of Montgomery County approving the private sale of real estate of a public school district.

Abington School District petitioned the court below for approval of the private sale of an unused and unnecessary building and lot pursuant to Section 707(3) of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, as amended, 24 P.S. §7-707(3). At the scheduled hearing the appellant, James Swift, appeared without counsel and objected to the proposed sale. He claimed that the School District could obtain a higher price than the $35,000 offered and objected to the use, unstated on the record, to which he believed the proposed purchaser, Philadelphia Council for Community Advancement, would put the property. The hearing judge patiently and correctly advised Swift of the purpose of the hearing and the court's function and invited Swift to make an offer for the property. Swift offered on behalf of himself and four other persons, none of whom were present, the sum of $35,500. He had no hand money but stated: "I'm quite sure I could call my bank and they could certify that I have a sufficient

amount of cash." In response to the judge's expression of willingness to entertain a higher offer provided the purchasers were immediately available with earnest money in hand, Swift answered: "I would have to have some time . . . Mr. Dickerson [an asserted co-purchaser] is presently in Cleveland, Mr. Friend [another alleged member of the venture] is presently in Virginia on business. I would say a couple of days. It would be impossible to do it today."

Section 7-707 of the Public School Code, 24 P.S. §7-707, in pertinent part, reads: "The board of school directors of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, by any of the following methods and subject to the following provisions: (1) By public auction . . . (2) Upon sealed bids . . . (3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be

given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered."

Appellant contends that the court below committed an abuse of discretion in not returning the matter to the school board for consideration of what he calls his offer. The statute gives the court power to approve or disapprove a private sale made by the board. The statute gives the court no power to negotiate for a better price, make a new sale or conduct an auction. *McKees Rocks Borough School District Petition*, 360 Pa. 285, 62 A. 2d 20 (1948). The court may properly approve a private sale despite a higher offer where the difference in price is small or where other circumstances regarding the sale negotiated by the school board appeal to court's sound discretion. *Imperial Cardiff Coal Co. Appeal*, 156 Pa. Superior Ct. 301, 40 A. 2d 163 (1944). Here the court had before it only the prospect of a future offer at a small advance in price. Far from being an abuse of discretion, its approval of the sale arranged by the school district was the judicious, and we add the judicially proper, action.

Appellant further contends that we should reverse the order approving the sale because the board's petition was executed by the school superintendent and not by "the proper officers of the board" as required by Section 7-707(3). This infirmity of the petition was not brought to the attention of the court below and therefore does not command our consideration. *Commonwealth v. City of Philadelphia*, 5 Pa. Commonwealth Ct. 358, 290 A. 2d 734 (1972). We observe, moreover, that at least one officer of the board executed the agreement of sale which was expressly made subject to court approval to be obtained by the school district and that the board, by its counsel, has vigorously supported the objective of the petition.

Appellant finally argues that the court abused its powers by amending its final decree some days after entry by the addition of the phrase "or its nominee" after the purchaser's name. This argument fails for several reasons. The instant decree approved the sale proposed by the board. That sale is evidenced by the agreement of sale in the record naming the Philadelphia Council For Community Advancement as buyer. The named buyer remained bound although the court by its decree recognized that the conveyance might be to the buyer's nominee. By its terms the agreement was made binding on assignees; it was thus assignable by the buyer without notice to the seller. *Riling v. Idell*, 291 Pa. 472, 140 A. 270 (1928). The amendment to the decree was therefore consistent with the buyer's existing rights under the agreement and in the absence of suggestion of improper purpose in the inducement of the change, we should and will not interfere with the hearing judge's broad discretion over the form of his own order, left by the statute here to his own devising. Additionally, this property might have been sold by auction or sealed bids and it could be immediately aliened by the named purchaser moments after conveyance to it, in any of which cases neither the school district nor any other entity or person, public or private, not alleging fraud or imposture, would have legal ground for objection based upon the identity of the ultimate titleholder.

Affirmed.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I disagree with the majority's conclusion that the lower court's refusal to return this matter to the school board for consideration of appellant's offer was both judicious and judicially proper. This action may have been expedient but it is my opinion that the public interest would have been better served if the lower court

had ordered the school board to consider the appellant's offer in this case. This would have necessitated no unreasonable delay as the matter could surely have been considered in a short time. I think it was unreasonable for the lower court judge to require that the prospective purchasers be immediately available with earnest money in hand before any other offer be considered.

I do not believe that this was simply an instance of a small difference in the price offered. There were other matters of concern that could have been explored and determined such as the use to which the land would be put,[1] what offer the appellants actually could and would make,[2] and who were the real parties in interest. When a disparity in offers exists, as in this case, I think a solution of these issues is necessary in order to determine exactly which offer should be approved, especially when the higher of the offers is rejected.

I am not contending herein that Mr. Swift clearly should have been approved as the purchaser, but merely say the matter should have been returned for the school board's reconsideration.

Although I hesitate to say that this sale was pushed through the processes involved, the record shows some indication that Mr. Swift was not afforded due courtesy and certainly not afforded the opportunity to present his case. In addition to the prejudice of Mr. Swift, the public in the Abington School District has not had the full benefit of judicial supervision.

---

[1] The majority agrees that the record did not reveal what use the land would be put to by the approved purchasers yet this should be a factor to be considered when there are differences in price.

[2] I realize that Mr. Swift quoted a figure of $35,500 but a reading of the record leads me to conclude that there was a good possibility that a substantially higher figure may have been reached had he realized all the considerations involved. He testified that they could offer $35,500 "with no problem."