In Re: Petition of the Board of Public Education of the School District of Pittsburgh for approval of the private sale of real estate in the 22nd Ward of the City of Pittsburgh to Divine Providence Hospital of Pittsburgh. Divine Providence Hospital of Pittsburgh, Appellant; Greek Orthodox Community Holy Trinity Church, Intervening Appellee.

Argued May 6, 1977, before Judges KRAMER, MEN-CER and ROGERS, sitting as a panel of three.

*Michael J. Boyle*, with him *P. Christian Hague*, and *Meyer, Unkovic & Scott*, for appellant.

*Ronald P. Talarico*, Assistant Solicitor, for appellee.

*William J. Chapas*, with him *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig*, for intervening appellee.

OPINION BY JUDGE KRAMER, August 16, 1977:

This is an appeal by Divine Providence Hospital of Pittsburgh (Divine Providence) from an order of the

Court of Common Pleas of Allegheny County, dated September 8, 1976, which ordered the School District of the City of Pittsburgh (School District) to convey certain real estate known as the Mary Jane Cowley School Property to the Greek Orthodox Community Holy Trinity Church (Church).

By a Land Purchase Option Agreement, dated January 12, 1976, the School District had agreed to sell the Cowley School property to Divine Providence for the sum of $36,000. This agreement had been approved by the Board of Public Education of the School District at its monthly meeting on December 23, 1975. On July 9, 1976, the School District petitioned the court below for approval of this private sale pursuant to Section 707 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-707, which provides in pertinent part:

The board of school directors of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, by any of the following methods and subject to the following provisions:

(1) By public auction ....

(2) Upon sealed bids ....

(3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of

at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered.

Between January 12, 1976 and the date of the hearing on the petition, July 30, 1976, the School District refused to consider any other offers for the property based upon the existence of the agreement with Divine Providence. One such offer was made by the Church. At the hearing on July 30, 1976, objections to the proposed private sale were raised by the Church and other interested parties. The lower court orally ordered that the hearing be continued until September 8, 1976, at which time the court would conduct a public auction of the subject property. At the September 8 hearing, Divine Providence objected to the auction as being beyond the power of the court, and refused to participate in the bidding. The Church successfully bid $36,001 and the court ordered that the property be conveyed to it.

This case actually presents two questions for decisions: (1) Did the court below abuse its discretion in refusing to approve the private sale to Divine Providence? (2) Assuming the refusal to approve the sale was correct, did the court below exceed its power and

abuse its discretion by conducting the public sale of the property?

Because of the posture of this case, we will answer the second question first. The law on this point is refreshingly clear. As this Court stated in *Swift v. Abington School District,* 7 Pa. Commonwealth Ct. 26, 29, 297 A.2d 538, 540 (1972): "The statute gives the court the power to approve or disapprove a private sale made by the board. The statute gives the court no power to negotiate for a better price, make a new sale or conduct an auction." In *Swift* we cited the decision of the Supreme Court of Pennsylvania in *McKees Rocks Borough School District Petition,* 360 Pa. 285, 62 A.2d 20 (1948) which involved the predecessor statute to Section 707. In that case the Court stated:

> The sole function of the court is to approve or disapprove the proposed private sale.
>
> . . . .
>
> . . . Having refused to approve, the *board,* and not the *court,* should have renegotiated the sale or, in lieu of a private sale, the *board* might, in the existing circumstances, expose the premises to *public* sale or receive *sealed bids.* This is for the board's decision and not the court's. (Emphasis in original.)

360 Pa. at 289, 62 A.2d at 22.

It is clear that the court below exceeded its powers by conducting the auction of the subject property, and, therefore, the order of the court directing the conveyance of the property to the Church cannot stand.

Next we turn to the difficult question of whether the court below acted properly and within its discretion in disapproving the proposed sale to Divine Providence. Unfortunately, due to the lack of a court stenographer at the July 30, 1976 hearing, we are without any official record of the proceedings at that hearing.

This gap in the record is crucial. Divine Providence argues that the court below erred and abused its discretion in disapproving the sale to Divine Providence because the successful bid by the Church at the September 8, 1976 hearing was only one dollar in excess of the price agreed upon between Divine Providence and the School District.[1] It must be recognized, however, that the Church's bid of $36,001 made on September 8 occurred in the context of an auction in which the Church was the only bidder. As we have already held, this auction was improper. The absence of any official record of the July 30 hearing leaves us in the dark as to what transpired at that time.[2] If offers substantially in excess of the Divine Providence agreement price were brought to the court's attention at that hearing, the lower court's disapproval of the private sale would be proper. *McKees Rocks Borough School District Petition, supra.* The state of the record in this case provides an insufficient basis for us to assess the propriety of the lower court's disapproval of the private sale.

In sum, because the court below erred by conducting a sale of the subject property after disapproval of the private sale, and because the record is not adequate to permit us to judge the propriety of that disapproval,

---

[1] A proper exercise of discretion may require approval of a private sale in the face of a higher offer where the price differential is small or other circumstances exist which override the difference in offers. *Swift, supra; Imperial Cardiff Coal Co. Appeal,* 156 Pa. Superior Ct. 301, 40 A.2d 163 (1944).

[2] The Church has produced letters dated March 11 and 17, 1976, which indicate that it made an offer of $37,000 for the property. These letters are not part of the official record and we cannot, of course, consider them on appeal. They do, however, point out the importance of the proceedings at the July 30 hearing and the crucial need for a record of that hearing that would disclose whether such offers were presented to the lower court.

we vacate the order of the court below and remand the record to that court for further proceedings consistent with this opinion.

This opinion was prepared by Judge KRAMER prior to his death and it is adopted as the opinion of the Court.

ORDER

AND Now, this 16th day of August, 1977, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter, dated September 8, 1976, is hereby vacated and the record remanded for further proceedings consistent with the foregoing opinion.