In Re: Petition of the Board of Public Education of the School District of Pittsburgh for Approval of the Private Sale of Real Estate in the 22nd Ward of the City of Pittsburgh to Divine Providence Hospital of Pittsburgh.

Divine Providence Hospital of Pittsburgh, Appellant.

Greek Orthodox Community Holy Trinity Church, Party Appellee.

Argued May 10, 1979, before Judges WILKINSON, JR., BLATT and DiSALLE, sitting as a panel of three.

*Michael J. Boyle*, with him *Kevin C. Hansen*, and *Meyer, Unkovic & Scott*, for appellant.

*David H. Dille*, Assistant Solicitor, with him *Robert J. Stefanko*, Solicitor, for appellee.

*William J. Chapas*, with him *Baskin & Sears*, for intervenor.

OPINION BY JUDGE DiSALLE, July 27, 1979:

We have before us an appeal from an order of the Court of Common Pleas of Allegheny County, dated October 3, 1978, which disapproved the sale by the School District of the City of Pittsburgh (School District) of certain unused and unnecessary land, known as the Mary Jane Cowley School Property, to the Divine Providence Hospital of Pittsburgh (Divine Providence).

Previously, on appeal of Divine Providence, we vacated an earlier order of the lower court which had directed the School District to convey this real estate to the Greek Orthodox Community Holy Trinity Church (Church). In so doing, we held that the court exceeded its power and abused its discretion by conducting a public sale of the property. Moreover, due to the inadequacy of the record in that prior proceeding, we were compelled to remand the case for further hearings and disposition. *Petition of the Board of Public Education of the School District of Pittsburgh,* 31 Pa. Commonwealth Ct. 431, 376 A.2d 1009 (1977). After an unsuccessful attempt to have all the parties reach an amicable settlement of the controversy, the lower court conducted several hearings and then rendered the order from which the instant appeal is taken.

The salient facts for purposes of this appeal follow. On December 23, 1975, the Board of Public Education of the School District approved a proposed Land Purchase Option Agreement in which the School District agreed to sell the Cowley School Property to Divine Providence for the sum of $36,000.00. The agreement was formally executed on January 12, 1976. Within the stated period, Divine Providence exercised its option to purchase the real estate. Thereafter, on July 9, 1976, the School District petitioned the court below for approval of this sale pursuant to Section 707 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §7-707.[1] Between July 12,

---

[1] Section 707 provides pertinently:

The board of school directors of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, by any of the following methods and subject to the following provisions:

(1) By public auction. . . .

(2) Upon sealed bids. . . .

1976, and the date of the original hearing on the petition, the School District refused to consider any other offers for the property, including one made by the Church. At the first hearing, during the settlement discussions, and at the more recent hearings, the Church has continually demonstrated its willingness to purchase this tract of land for more than $36,000.00. In fact, the Church has given assurances to the lower court that it would be ready to buy the property for $41,400.00.

The court below, in disapproving the proposed sale, seemed particularly concerned with whether the School District was receiving an amount which was in accordance with the value of the property. However, a proper exercise of discretion may require approval of a private sale, despite a higher offer, where circumstances exist which override the difference in the of-

---

(3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered.

fers. *Swift v. Abington School District*, 7 Pa. Commonwealth Ct. 26, 297 A.2d 538 (1972). We believe that just such circumstances are present in the instant case and that the lower court abused its discretion in failing to recognize their overriding importance here.

In the first place, the School District expressly acknowledged that the $36,000.00 sale price was fair and reasonable.[2] In light of this, and in the absence of any specific testimony to the contrary, we must conclude that the interests of the School District have been adequately protected. The concern of the lower court that the agreed to price did not reflect the true value of the property must, therefore, be discounted. Additionally, it must be remembered that the School District and Divine Providence had entered into a Land Purchase Option Agreement. While this agreement was subject to final court approval, the hospital had expended $4,000.00 in option and hand money in reliance on the exercise of its option. Although our Supreme Court has stated that an unauthorized option agreement gives a potential buyer no additional equities, *McKees Rocks School District Petition*, 360 Pa. 285, 62 A.2d 20 (1948), where, as here, the agreement is authorized and has also been approved by the Board of Public Education of the School District, we believe that equitable considerations should operate so as to favorably influence a court's approval of the petition for sale.

One of those considerations is whether the interests of the public would be better served if the proposed sale were to be approved. It is clear that it is the function of the Court to ascertain whether the pro-

---

[2] In its petition for approval of the sale, the School District relied upon the appraisals of two independent real estate appraisers, both of whom were familiar with the values of property in the locality. These men, by attached affidavits, swore that the price offered was a fair and reasonable one and that, in their opinion, a better price than could be obtained at private sale.

posed sale is in the public interest. As noted above, the fact that a higher offer has been made is only one factor to be considered by the Court, and is not necessarily controlling with regard to the approval or disapproval of the sale. In *Swift*, 7 Pa. Commonwealth Ct. at 29, 297 A.2d at 540, we said:

> The Court may properly approve a private sale despite a higher offer where the difference in price is small *or where other circumstances regarding the sale negotiated by the school board appeal to the court's sound discretion.* Imperial Cardiff Coal Co. Appeal, 156 Pa. Superior Ct. 301, 40 A.2d 163 (1944). [Emphasis supplied.]

The record establishes that Divine Providence was established at its present location in 1953 and from its inception, it has been an acute care general hospital. The primary service area of the hospital is in the district known as the North Side of the City of Pittsburgh. Its secondary service area encompasses the South Hills area, the North Hills area, and those counties contiguous to Allegheny County on the West, North and South. The hospital's operating budget for the fiscal year ending June 30, 1978, was $9,700,000 and it employs presently about 400 employees. The medical staff of the hospital consists of approximately 100 doctors. In the last fiscal year, 6,000 patients were admitted to Divine Providence and its Emergency Room recorded in excess of 16,000 visits.

In 1973, Divine Providence undertook an expansion project at a cost in excess of $6,000,000, the first phase of which was completed in 1975. At present, the hospital has a total bed complement of 177. In order to effectuate its expansion plan Divine Providence needs a total of 138 parking spaces under the provision of the Zoning Ordinance of the City of Pittsburgh which requires one space for every 650 square feet, less 50

percent in this area of the North Side. The subject property would provide 62 parking spaces, which apparently will satisfy the requirements of the Zoning Ordinance. Furthermore, the Zoning Ordinance requires that any parking off hospital premises be within 1,000 feet of the institution to qualify as "on-site" parking. It is clear that the Cowley School Property site is the only available parcel of land within the cost containment policy of the hospital within a 1,000 foot radius. In addition, Divine Providence has presently utilized its full complement of parking spaces. In order to bring its presently non-conforming facilities and beds into compliance with federal governmental regulations and continue its expansion program, the acquisition of new parking spaces is absolutely essential.

Lastly, it is undisputed that the subject property is zoned residential, and that Divine Providence applied to the Planning Commission of the City of Pittsburgh for a conditional use in order to use the subject premises for parking. The Planning Commission, after hearings, recommended the granting of the hospital's Application for Conditional Use on condition that Divine Providence make provision for the Church to use the parking lot when it was not being used by the hospital. This would enable the Church to use the lot in the evenings during the week, and on Saturday and Sunday. Such an arrangement could only work to the benefit of all concerned.

Given all of the factors enumerated herein, we are compelled to conclude that the petition of the School District should have been granted and that the proposed sale to Divine Providence should have been approved, with appropriate provision being made for the use of the parking lot by the Church pursuant to the conditions set forth by the City Planning Commission. Accordingly, we reverse.

ORDER

AND Now, this 27th day of July, 1979, the order of the Court of Common Pleas of Allegheny County dated October 3, 1978, is hereby reversed and the case is remanded to the lower court so that it may enter an appropriate order granting the petition of the Board of Public Education of the School District of Pittsburgh for approval of the private sale of real estate in the 22nd Ward of the City of Pittsburgh, known as the Cowley School Property, to Divine Providence Hospital of Pittsburgh for the amount of $36,000.00.