Petition of WILKINSBURG SCHOOL DISTRICT for Court Approval of The Sale of Vacant Land Pursuant to Section 703(3) of the Pennsylvania Public School Code.

Appeal of: Linda Kauffman, Robert Firth, Maryann Lambing, Elizabeth Ebel, Deborah Salzar, Sarah Bauer, Jim Kennedy, Charlotte Kennedy, Kaitlin Kennedy, Marty Cathcart, Therese Libert, Jessica Gogan, Julie Evans, Joe Davis, Dawn Lehman, Pat Watt, Susan Finger, Ann P. Anderson, Linda M. McSweeny, Mary Spezialetti, Autumn Kacian, Michael L. Goswell, Michael Lefebvre, Bob Bilas, Corey Makrush, Randall Connolly, Brenda Smith and The Nine Mile Run Watershed Association, Inc.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 24, 2014.

Decided Oct. 8, 2014.

Michael H. Wojcik, Pittsburgh, for appellants.

Matthew M. Hoffman, Pittsburgh, for appelleé Wilkinsburg School District.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge (P.) and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge McGINLEY.

The Nine Mile Run Watershed Association, Inc.,[1] its executive Director, Brenda Smith, and twenty-six residents and taxpayers (collectively "Objectors") who reside within the Borough of Wilkinsburg School District (School District) and the Borough of Wilkinsburg appeal from the order of the Court of Common Pleas of Allegheny County (trial court) which approved the School District's sale of vacant land, known as "Green Street Park" (Property) pursuant to Section 707(3) of the Public School Code of 1949 (Public School Code),[2] 24 P.S. § 7–707(3).

The Property is approximately one-half acre. It contains low concrete walls, grassy areas, and a deteriorated basketball court. There are no buildings on the land and it has never been used by the School District for any purpose. The nearest school building, Kelly Elementary School, is located two blocks from the Property and has its own playground and recreational area. The Property has never been used by Kelly Elementary School for programs or activities. The Property is not located in close proximity to any other School District land or buildings.

Since 1970, the Property was used as a park and was maintained by the Borough. The School District actually did not learn that it owned the Property until the summer of 2011, when the Borough informed the School District that the Borough would no longer maintain the Property as a park and that any future maintenance would be the School District's responsibility. Between October 2011 and February 2012, the School District and the Borough considered and discussed potential conveyance

---

1. Nine Mile Run Watershed Association, Inc. is engaged in "smart" development and preservation of green space in the Nine Mile Run Watershed, which is located in Eastern Allegheny County. The Borough of Wilkinsburg (Borough) is located within the Nine Mile Run Watershed.

2. Act of March 10, 1949, P.L. 30, *as amended.*

of the Property to the Borough. In February 2012, the Borough notified the School District that it was not interested in acquiring title to the Property.

Over the course of several months, the School District's Board of Directors (School Board) discussed the status of the Property at public meetings and reached a consensus that the School District did not use the Property and that the Property was unnecessary for school purposes.

In May 2012, the Borough informed the School District that Akator Construction, LLC was interested in purchasing the Property. At the School Board's meeting on December 18, 2012, a Motion was made, and seconded, to approve the "Agreement of Sale" between the School District and Akator Construction to sell the Property for $71,000.00.[3] The Motion was carried by unanimous vote.

In April of 2013, the School District filed a Petition for Court Approval of the Private Sale of Vacant Land pursuant to Section 707(3) of the Public School Code, 24 P.S. § 7–707(3). In Paragraph 3, the School District averred:

> 3. The Property is not and has not recently been used for school purposes and Wilkinsburg's Board of School Directors *has determined* that the Property is not necessary for school purposes (Emphasis added).

Second Amended Petition for Court Approval, April 17, 2013, at 1; Reproduced Record (R.R.) at 2.

In response, Objectors argued that the School District was required to pass *a separate resolution or motion* specifically finding that the Property was "unused and unnecessary" before determining whether to sell. Objectors also argued that the Property was "used" by adults and the

children in the neighborhood and was "necessary" green space.

An evidentiary hearing on the Petition for Court Approval was held on September 4, 2013. The School District presented testimony of former School District Superintendent, Archie Perrin (Perrin), who testified that in 2011, when the School District learned that it owned the Property, there was "discussion among the Board of School Directors what to do with the Property." Hearing Transcript, September 4, 2013, at 15; R.R. at 90. That discussion occurred "over time at various meetings." *Id.* He explained that the School Board was made up of nine directors. The "Finance Committee," "Buildings and Grounds Committee" and "Property Committee" periodically met and discussed "what to do with the Green Street parcel." *Id.* at 16, 21; R.R. at 91, 96. The topic was also discussed by the full School Board at the planning session when the budget and financial reports were presented. *Id.* at 16, 22; R.R. at 91, 97. Perrin admitted on cross-examination that the full Board did not pass a separate motion or resolution determining the property was "unused and unnecessary." *Id.* at 22; R.R. at 97.

Former School District Business Manager, Bruce Dakan (Dakan) testified that discussions about whether there was any utility of the Property to the School District took place "over 12 to 18 months" at finance committee meetings and planning sessions with a representative of the Board and residents and the finance committee and the "whole Board discussed and deliberated" the Property. *Id.* at 43; R.R. at 118. Like Perrin, Dakan admitted that "there was no resolution or motion where the School Board declared the [P]roperty

---

3. The purchase price of $71,000.00 coincided with the fair market value of the Property as

determined by an appraisal previously commissioned by the School District.

to be unused and unnecessary." *Id.* at 55; R.R. at 130.

The School Board President, Karen Payne (Payne), testified that the decision of the School Board that the Property was unused and unnecessary "happened over a series of meetings and discussions." There was no motion or resolution. *Id.* at 74; R.R. at 149. Payne also testified that the School Board was aware that the Borough of Wilkinsburg did a survey and determined that several parks were either not used or underutilized, and that the Property was one of those. *Id.* at 82; R.R. at 157. At a legislative meeting held after the Petition for Approval of the Sale of the Property was filed, an objector approached the School Board and asked for a meeting with the School Board to discuss the Property. The School Board granted the request. *Id.* at 75; R.R. at 150.

One objector, Linda Kauffman (Kauffman), resided across the street from the Property. She testified that she did have the opportunity, after the Petition for Approval of the Sale was advertised, to appear before the School Board to explain how the Property was used by her and other neighborhood residents. *Id.* at 95; R.R. at 170. Kauffman explained to the School Board that the Property was "not unused, it was not unnecessary, and that [she was] very upset about our park, our neighborhood park being disposed of in this way." *Id.*

Kauffman testified that the Property was used "by a number of children in the neighborhood" and that it was "a gathering point for the adults." *Id.* at 86; R.R. at 161. Kauffman testified that ten to twelve children use the Property as a park and that "three or four of them go to parochial school" and "three or four of

them" who were previously home schooled "are going to a charter school." Id. at 91; R.R. at 166. She testified that if the Property was sold, the biggest loss would be "the open green space." *Id.* at 99; R.R. at 174. Kauffman admitted the Property was "not used by the School District for school programs." *Id.* at 101; R.R. at 176. However, she believed the School District had a "civic responsibility" to the "tax paying citizens of Wilkinsburg" to "bear the liability of the Property, in terms of maintaining it, insuring it, and being exposed to risks of claims if anybody gets hurt" as long as she and her neighbors used it. *Id.* at 102; R.R. at 177.

By order dated September 4, 2013, the trial court approved the Petition and authorized the School District to proceed with the private, negotiated sale of the Property to Akator Construction. The trial court found that the Public School Code did not require a *motion or resolution* specifically finding that real estate is "unused and unnecessary" before it may be sold. The trial court also rejected Objectors' contention that the Property was not "unused" because the children from the community use it. The trial court rejected Objectors' contention that public school-owned property would be "deemed to be 'used' so long as anyone at all is making any use whatsoever of the property." Trial Court Opinion, December 12, 2013, at 5. The trial court found that "since it is within the Public School Code, 'unused' must be considered in relation to public schools." *Id.*

■ On appeal,[4] Objectors assert that the trial court erred when it approved the sale of the Property because: (1) the School District failed to demonstrate that

---

4. This Court's scope of review is to determine whether the trial court abused its discretion or erred as a matter of law. *Petition of the*

*School District of Pittsburgh,* 31 Pa.Cmwlth. 431, 376 A.2d 1009 (1977).

it determined, either *by motion or resolution,* that the Property was both "unused and unnecessary;" and (2) the Public School Code does not require that the property be "unused and unnecessary" *for school purposes.*

### Sections 703 and 707 of the Public School Code

Section 703 of the Public School Code, 24 P.S. § 7–703, vests a school board with broad authority to sell real estate owned by the School District. That provision provides, in pertinent part: "the board of school directors of each district is hereby vested with the necessary power and authority to acquire ... and to sell, convey, transfer, dispose of, or abandon the same, or any party thereof, as the board of school directors shall determine."

Section 707 of the Public School Code, 24 P.S. § 7–707, sets forth three methods by which a school board may sell unused and unnecessary lands and buildings: (1) by public auction; (2) upon sealed bids; and (3) at private sale:

> The board of school directors of any district is hereby vested with the necessary power and authority to sell *unused and unnecessary* lands and buildings, by any of the following methods and subject to the following provisions: (Emphasis added.)
>
> (1) By public auction, either on the premises to be sold or at places selected by the school board, after due notice by publication in one or more newspapers of general circulation published within the county or the school district and in the legal newspaper in said county, if any, once a week for three successive weeks before the date fixed for said sales, and by hand bills, one or more of which must be posted on the property proposed to be sold, and at least five of which must be posted at conspicuous places within the vicinity of said real estate. Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the sale.
>
> (2) Upon sealed bids requested by the school board, notice of the request for sealed bids to be given as provided in clause (1) of this section. Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the request for sealed bids.
>
> (3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefore.is a fair and reasonable one and in their opinion a better price than could be obtained at a public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed examined and delivered.

### I.

The first question posed here is whether the School District was required

to prove that the School Board formally determined, *by motion or resolution,* that the Property was "unused and unnecessary." Objectors contend that the School District, as a public body, must exercise its discretion through a "formal process" which includes the introduction of a motion or resolution, notice to the community which provides the opportunity to comment, debate before the community in an open public meeting and a recorded vote before the community in an open public meeting.

Objectors rely on *In re: Petition of Board of School Directors of Bentworth School District for Private Sale of Real Estate,* 36 Pa. D. & C.3d 153 (1985). In *Bentworth,* Bentworth School District sought approval of the Washington County Court of Common Pleas (common pleas court) to sell a one-story brick building to the Episcopal Diocese of Pittsburgh pursuant to Section 707(3) of the Public School Code, 24 P.S. § 7-707(3). In its Petition for Approval, Bentworth School District averred in Paragraph 2 that: "Bentworth School District is the owner of certain improved real estate located in the Borough of Ellsworth, Washington County, Pa., which your petitioners have determined to be unused and unnecessary for school purposes." *Bentworth,* 36 Pa. D. & C.3d at 157.

Objections were filed to the petition and the objector complained, *inter alia,* that Bentworth School District failed to prove that "it formally determined, either by motion or resolution, that the property was both unused and unnecessary." *Bentworth,* 36 Pa. D. & C.3d at 155.

The common pleas court agreed that Paragraph 2 contained a necessary allegation which required proof. The common pleas court relied on the following excerpt from *In Re: Petition of Monroeville School District,* 101 P.L.J. 258 (1954):

The decision to sell lands rests largely within the discretion of the board of school directors, and the courts will not interfere with the school authorities in the exercise of their discretion unless there is a clear abuse of discretion: *Wilson v. School District of Philadelphia,* supra; *Hibbs v. Arensberg,* 276 Pa. 24 [ (1923) ]; *Henry McCullough v. The School Directors of Fourth Ward,* 11 Pa. 476 [ (1849) ]. Prior to the Act of May 11, 1939, P.L. 117, the school directors had authority to sell land without the approval of court. But commencing with the Act of 1939, as amended in 1945 and reenacted in the 1949 School Code, the legislature saw fit to require court approval of private sales of unused and unnecessary lands. It is evident that the legislature did not intend to substitute the courts' discretion for the board of directors' in determining the advisability of selling certain school property. In all three methods of sale of unnecessary and unused land and buildings, prescribed by section 707, the legislature empowers the board of school directors to make the sale, subject to the statutory standard that the lands and buildings are unnecessary and unused.    .

While the court in this proceeding may not consider whether the exercise of the board's discretion in determining whether the subject real estate was unused and unnecessary was arbitrary and capricious, *the board must prove that it did in fact exercise its discretion, and in fact made a determination that the subject real estate was unnecessary.* (Emphasis added.)

*Bentworth,* 36 Pa. D. & C.3d at 157–158 (citing *In Re: Petition of Monroeville School District* ).

Based on this excerpt, the common pleas court concluded that the Bentworth School District was required to plead and prove

that it exercised its discretion and "determined" that the property was unused and unnecessary for school purposes and remanded. *Bentworth*, 36 Pa. D. & C.3d at 158.

Here, Objectors argue that *Bentworth* and Section 707(3) of the Public School Code, 24 P.S. § 7–707(3), require that a school board plead and prove that it *determined by formal motion or resolution* that the subject real estate was "unused and unnecessary." Objectors argue that in Paragraph 3 of its Petition for Approval of the Sale, the School District pled merely that it had "determined" that the Property was "unused and unnecessary," and admitted that it did not pass a *motion or resolution* underlying that determination. This Court does not agree with Objectors' reading of *Bentworth*. And, although *Bentworth* was a common pleas court decision, this Court finds it to be persuasive.

*Bentworth*, and the case upon which it relied, *In Re: Petition of Monroeville School District*, held that a school district was required to plead and prove that it "determined" that the subject real estate was "unused and unnecessary" before it sought approval of the sale. Although the objector in *Bentworth* argued that a *motion or resolution* was necessary, neither case held that such "determination" must be made by formal vote on a motion or resolution.

5. *See also* Section 609 of the Public School Code, 24 P.S. § 6–609, which necessitates a two-thirds vote on the use and transfer of budgeted funds.

6. Although the language of the statute mandates a record of an affirmative vote of the majority of the school board, our Supreme Court has held that, absent a formal vote recorded in the minutes, the requirements of the statute are still met if a party can produce "solid proof" of the majority's approval. In *Mullen v. Board of School Directors of DuBois*

Not every decision or conclusion of a school board must be approved by an affirmative recorded vote of a majority of all the members. Section 508 of the Public School Code lists the types of actions that require an affirmative vote of the majority.[5] One of those requirements is a school board's decision to sell land. That Section provides, in pertinent part:

> The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall [6] be required in order to take action on the following subjects-
>
> * * * *
>
> Purchasing, *selling* or condemning land.

24 P.S. § 5–508 (Emphasis added.)

The purpose of this provision was explained in *School District of Dennison Township v. Padden*, 89 Pa. 395, 397 (1879):

> This statute is a valuable one, intended to compel the expression of each individual member of the school board on a subject all-important in the public education, and this for the very purpose of *preventing jobbery, and the exercise of a one-man power*, in the conduct of our common schools. . . . (Emphasis added.)

Here, the School Board's *decision to sell* the Property was voted upon at a public meeting on December 18, 2012. The motion included the $71,000 purchase price

*Area School District*, 436 Pa. 211, 259 A.2d 877, 880 (1969), the Supreme Court held:

> The expression of the board members' approval required by the statute can be evidenced in ways other than by a formal vote recorded in the minutes. To allow this does no violence to the purpose of the statute. . . . We hold the requirement of a formal recorded vote to be directory only, although with the caveat that the proof from which Board approval can be inferred must be solid.

and a draft of the Purchase Agreement. The motion was seconded and approved by unanimous affirmative vote and duly recorded. The School Board's *decision to sell* the Property was undertaken in total compliance with Section 508 of the Public School Code, 24 P.S. § 5–508.

Objectors, nevertheless, argue that the School Board's "determination" that the Property was "unused and unnecessary" must also have been *by formal vote on a motion or resolution.* This Court must disagree.

First, Section 508 of the Public School Code, 24 P.S. § 5–508, does not require that a school board determine that the Property was "unused and unnecessary" by formal recorded vote of the majority of all members of a school board.

Nor does Section 707(3) of the Public School Code, 24 P.S. § 7–707(3). While Section 707(3) authorizes a school district to sell "unused and unnecessary" property, there is nothing in the statute, or in *Bentworth,* which requires that a school board's determination that a property is "unused and unnecessary" must be made by formal vote on a resolution or motion.

Rather, as the *Bentworth* Court observed, a school board must prove merely that it "determined" the property at issue was "unused and unnecessary" before it requests the trial court to approve the sale. Undoubtedly, before a trial court may approve the sale of "unused and unnecessary" property, it must be convinced that the school board exercised its discretion and came to the consensus that the property was indeed "unused and unnecessary."

Here, the School District pled and proved by undisputed evidence that the School Board "determined" that the Property was "unused and unnecessary" prior to seeking the trial court's approval of the sale. The School District presented undisputed evidence that the School Board considered that the Property was never used by the School District for any purpose; another elementary school was located two blocks from the Property and had its own playground and recreational area; and the Property was not located in close proximity to any other School District land or buildings. The School Board made this determination after months of public discussion and deliberation before it sought approval of the sale. Accordingly, the School Board demonstrated that its decision to sell the Property under Section 707(3) of the Public School Code, 24 P.S. § 7–707(3), was based on its "determination" that the Property was "unused and unnecessary." There was absolutely no evidence in the record that approval by the School Board was not given.

Objectors also argue that by failing to pass a motion or resolution the School District was able to avoid the "open and public process."

This Court assumes that Objectors are referring to Section 2 of the Sunshine Law, 65 Pa.C.S. § 262, which provides:

The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. *No formal action shall be valid unless such formal action is taken during a public meeting.* (Emphasis added.)

Section 1 of the Sunshine Law, 65 Pa. C.S. § 261, provides that a school board is an agency subject to the legislation, and defines "formal action" as follows:

'Formal action' means the taking of any vote on any resolution, rule, order, motion, regulation, or ordinance or the setting of any official policy.

In *Judge v. Pocius,* 28 Pa.Cmwlth. 139, 367 A.2d 788 (1977), this Court held that

the acts of deliberation, discussion and decision prior and leading up to the affirmative formal action which renders the official decision of public agencies does not constitute "formal action" for purposes of the Sunshine Law.

There, the decision before the school board directors was whether to close four elementary schools. The trial court found that the school board directors discussed the subject and each stated his opinion on the question. This Court affirmed the trial court's finding that this exchange was not a vote on the issue but was merely a discussion as to whether or not the matter should be placed upon the agenda of a public board meeting to be held in the future. *See also Morning Call v. Board of School Directors,* 164 Pa.Cmwlth. 263, 642 A.2d 619 (1994) (actions to reduce the field of candidates for superintendent were merely discussions and deliberations and the vote that was the official action was the appointing of a superintendent).

Here, the record establishes the School Board discussed and deliberated at various public meetings whether the Property had any use *for school purposes* before deciding to sell it at its appraised value. The School Board considered Objectors' position, but nevertheless decided to go forward with seeking the trial court's approval of the sale.

Under *Judge,* the discussions and deliberations during which the School Board considered the Property's use and relationship to the Kelly Elementary School were preliminary activities of deliberation, discussion and decision which led up to the formal decision to sell the Property. The discussions and deliberations were not "formal action;" thus, it was unnecessary that there be a formal resolution or motion voted upon in public.

In any event, Objectors were provided an opportunity to be heard on the matter of whether the Property was "unused and unnecessary." Kauffman admitted the School Board held a special meeting where Objectors attended and presented their position on why they believed the Property was used and necessary to the Wilkinsburg community at large.

As noted, the School Board's vote to sell the Property took place at a public meeting on December 18, 2012. This Court finds that there was no violation of Section 707(3) of the Public School Code, 24 P.S. § 7-707(3), and that the requirements of this section were met.

## II.

In their next issue, Objectors assert that the Public School Code does not require that the Property be "unused and unnecessary" *for school purposes.*

Objectors claim the Property is not "unused and unnecessary." They argue that the Property was constantly in use and necessary for the good of the Wilkinsburg community, in general, and for the educational purposes of homeschooled children who reside in Wilkinsburg. Objectors contend that ten percent of children in the School District are home-schooled and another thirty percent are in Charter Schools. Objectors contend that the Property is used for educational purposes because many of those children use the Property.

This Court rejects Objectors' argument and interprets Section 707 of the Public School Code, 24 P.S. § 7-707, to mean that the real estate must be "unused and unnecessary" for purposes of the school district which owns the land.

The stated purpose for permitting school districts to acquire and own real estate is "to furnish school buildings or other suitable sites *for proper school purposes for said district*[.]" Section 703 of the Public

School Code, 24 P.S. § 7–703 (emphasis added). This provision must be considered when interpreting the term "unused and unnecessary" in Section 707 of the Public School Code, 24 P.S. § 7–707. Otherwise, to construe the term "unused and unnecessary" to mean for *anyone's* purpose, other than that of the school district, would allow members of the public to forestall a school district's disposition of property that is not needed for educational purposes, which is the only purpose for which a school district may own property.

Furthermore, a school district would be required to own, maintain, and insure property that it does not want, does not use and does not need. To force a school district to retain property would saddle it with maintenance costs and potential liabilities. This Court concludes that the fact that neighborhood residents use the Property for recreational purposes is wholly irrelevant to the analysis under Section 707 of the Public School Code, 24 P.S. § 7–707. Objectors' interpretation is untenable.

Moreover, to the extent that Objectors claim that the Property is used and necessary "for educational purposes" because home-schooled children and children who attend charter schools use it, this Court must reject this argument, as well. The School District, in its discretion, concluded that there is a playground two blocks from the Property which was available.

In sum, the School District demonstrated that its School Board considered and determined that the Property was "unused and unnecessary" for school purposes. Consequently, the trial court's approval of the sale of the Property was not an abuse of discretion. Further, the trial court correctly concluded that Objectors' use of the Property for their private recreational purposes was not a valid reason to deny the School District's petition.

The trial court is affirmed.

### *ORDER*

AND NOW, this 8th day of October, 2014, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.

CONCURRING OPINION BY Judge McCULLOUGH.

I concur with the Majority's conclusion that Section 707(3) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 7–707(3), does not expressly provide that a school board's determination that a property is "unused and unnecessary" must be made by formal vote on a resolution or motion. In addition, because the trial court found credible the testimony of former Borough of Wilkinsburg School District Superintendent, former School District Business Manager, and School Board president Karen Payne that Green Street Park was determined to be unused and unnecessary, I concur in that result. However, I write separately to note that if the trial court had found the park was used by resident homeschoolers and charter school students, such use should have been taken into consideration by the district in its assessment of whether the park was used or necessary for educational purposes. The use of public parks for educational purposes by resident homeschooled or charter school students who have chosen another means of education than the public schools should be a fundamental consideration by the district in determining whether the park is used or necessary.