IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Private Sale          :
of Property by the Millcreek           :
Township School District               :  No. 1922 C.D. 2015
                                       :  Argued:  April 12, 2016
Appeal of:  Montessori Regional        :
Charter School                         :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: July 20, 2016

Montessori Regional Charter School appeals an order of the Court of Common Pleas of Erie County (trial court) that approved Millcreek Township School District's proposed private sale of real property to VNet Holdings, LLC and denied Montessori's request to stay the sale.  The trial court held that the proposed private sale satisfied the requirements of the Public School Code of 1949[1] (Public School Code) for the stated reason that the price was fair and reasonable and better than the School District could obtain at a public sale.  Montessori contends that the trial court erred and abused its discretion in so holding because Montessori made a significantly higher offer that was free of the contingencies in the offer of VNet.  We agree and reverse.

**Background**

In 1951, the Millcreek Township School District built the Ridgefield Elementary School on the subject property, which is located in the township's R-1 single-family residential zoning district.  The entire Ridgefield property measures

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702.

7.9 acres and includes a playground, a parking lot and open space. In 2013, the School District closed the Ridgefield Elementary School for lack of use. In July 2014, the School District listed the Ridgefield property for sale.

In August 2014, Montessori, the only charter school in Millcreek Township, offered to purchase the Ridgefield property for $1.1 million in cash. The School District rejected the offer. On December 4, 2014, VNet offered to purchase a portion of the property for $1.1 million, contingent upon the property being rezoned so that VNet could use the school building for a commercial business. On December 16, 2014, the School District filed an application with the township to subdivide the Ridgefield property. Ultimately, the School District requested approval to subdivide the property into three lots. Lot 1, measuring 5.9 acres, contains the former school building and parking lots. Lots 2 and 3 each measure approximately one acre and contain vacant fields.[2]

In January 2015, Montessori made a second offer to purchase the entire Ridgefield property for $1.1 million in cash plus Montessori's school and land on Sterrettania Road in Millcreek Township, valued for tax assessment purposes at $689,000. This offer also provided that Montessori would lease the Sterrettania Road property from the School District for three years, with two one-year renewal options. The School District rejected Montessori's second offer.[3]

---

[2] In May 2015, Millcreek Township approved the subdivision of the Ridgefield property. Montessori intervened in the appeal of the subdivision approval, which was denied by the trial court on November 5, 2015. Montessori's appeal of the trial court's order denying its land use appeal is presently before this Court. *Montessori Regional Charter School v. Millcreek Township Board of Supervisors,* No. 2468 C.D. 2015. Neither the School District nor VNet has applied for rezoning of the property.

[3] The School District also rejected two offers from BNS Properties: an initial offer of $950,000 for the entire parcel and a subsequent offer of $1 million for approximately 5 acres.

2

In February 2015, the Board of School Directors voted to accept VNet's offer to purchase Lot 1. In April 2015, the School District placed a restrictive covenant in the deed to the Ridgefield property to prohibit the sale or lease of the empty school building to a charter school. Montessori challenged the deed restriction in a declaratory judgment action.[4]

In July 2015, the School District petitioned the trial court for approval of the private sale to VNet, as is required by the Public School Code. Attached to the petition were the affidavits of two certified real estate appraisers opining that the price offered by VNet was fair and reasonable and was a better price than the School District could obtain at a public sale. The appraisers did not opine on Montessori's rejected offers.

Montessori petitioned to intervene in the private sale proceeding, citing its desire to purchase the Ridgefield property and its pending declaratory judgment action to challenge the deed restrictions. Montessori also moved to stay the private sale petition as premature because VNet's offer was conditioned upon a rezoning of the Ridgefield property.

In September 2015, the trial court conducted a hearing on the School District's petition to sell the property. Both the School District and Montessori appeared and presented evidence. VNet appeared but did not offer evidence.

The School District presented the testimony of its Superintendent, William Hall. He testified that the School District accepted VNet's offer for several reasons: the School District needed the cash; it wanted to retain two acres of the property to provide a buffer between VNet's proposed commercial building

---

[4] The trial court dismissed Montessori's declaratory judgment action challenging the deed restriction. Montessori's appeal of that order has been docketed at 248 C.D. 2016.

3

and adjacent homes while providing the neighborhood with green space; and it wanted to return Lot 1 to the tax rolls, expecting $15,000 in annual tax revenue. Hall stated that he recommended that the School Board reject Montessori's offer because the charter school would reduce the school population of the School District. Hall asserted that Montessori would use Millcreek tax money to purchase real property that Millcreek taxpayers already own.[5] The School District did not want the Sterrettania Road property because it would be "more of a liability than an asset." Reproduced Record at 187a (R.R. ___).

Hall testified that the School District spends approximately $100,000 per year to maintain the empty Ridgefield school building and adjacent land. Hall also acknowledged that the School District has not applied to have the Ridgefield property rezoned from residential to commercial.

The School District then presented the testimony of Raymond Sammartino, a certified appraiser. He testified that the highest and best use of the property was as a school or professional office, noting that the market for schools was weak. Using the sales comparison approach, Sammartino valued the 5.9 acre parcel (Lot 1) at $1.1 million, which made VNet's offer of $1.1 million a fair and reasonable price and better than the School District could obtain at public sale. Sammartino described Montessori's Sterrettania Road property as "an albatross." R.R. 218a.

The School District presented the testimony of another certified appraiser, Robert Glowacki, who appraised 5.1 acres of the Ridgefield property in

---

[5] This rationale is not clear. It refers, apparently, to the per-pupil payments the School District must make to a charter school; Montessori will receive these payments whether or not it buys the property.

4

July 2013 and again in January 2015. He stated that his opinion would be the same for all of Lot 1, *i.e*, the 5.9 acres to be sold to VNet. In his July 2013 appraisal report, Glowacki opined that rezoning of the Ridgefield property was unlikely and that the highest and best use of the property was as an elementary school. Two years later, Glowacki opined that a professional office was one of the highest and best uses of the Ridgefield property, given market changes. Glowacki valued the 5.9-acre Lot 1 at $1.1 million and agreed with Sammartino's appraisal opinion.

VNet President, Joel Deuterman, was present but did not testify, telling the trial court that "everything I wanted to say was covered." R.R. 236a-37a. Notably, the sales agreement between the School District and VNet required VNet to make a $25,000 deposit and authorized VNet to borrow up to $800,000 to complete the purchase. The sales agreement also provided that all final approvals for the sale must be obtained by November 5, 2015.

Two members of the public spoke in opposition to the proposed sale to VNet.

Montessori presented the testimony of its CEO, Anthony Pirrello. He explained that Montessori currently operates in two school locations and has an annual budget of $5 million. Montessori wants to consolidate its two schools into one, which will save taxpayers money. Montessori could renovate its existing Sterrettania Road school, but it would cost $12 million to do so because of the age of the building and the shape of the parcel. If Montessori purchases Ridgefield, it will cost $6 million to refurbish the existing school building, which represents a considerable savings.

Pirrello testified that Montessori's purchase of the Ridgefield property will not impact the School District's budget because only 17% of Montessori's

5

students come from the School District. Further, Montessori's enrollment is capped at 600 students.

Pirrello explained that in August 2014, when it made its $1.1 million offer, the only other offer was for $950,000. One month later, Pirrello attended a Millcreek Planning Commission meeting where the Commission recommended opposing the rezoning needed to allow the school to be used as an office because it would constitute illegal spot zoning. In January 2015, Montessori increased its $1.1 million offer by adding the conveyance of its Sterrettania Road property, which is located in the C-2 commercial zone and, thus, amenable to a number of uses.

At the end of his testimony, Pirrello made a new offer that removed the Sterrettania Road property from the offer. Rather, Montessori offered to purchase all 7.9 acres of the Ridgefield property for "$1.6 million cash deliverable in the fastest closing time possible." R.R. 317a. Pirrello testified that Montessori had $1,466,000 in cash on hand, a net worth of $941,055 and a commitment from a bank to finance the transaction with an 80/20 loan. Montessori presented its audited financial statement.[6] Pirrello testified that under Montessori's ownership, the public would have access to the two acres of green space, as well as the playground and parking lot.[7]

---

[6] The School District presented no evidence on the financial health of VNet.

[7] The trial court denounced this offer because it was not in writing, too late and not sufficiently specific. R.R. 333a-34a.

6

On September 10, 2015, the trial court approved the School District's proposed private sale to VNet and denied Montessori's petition to intervene. It refused to stay the sale until such time as VNet obtained rezoning.

Montessori moved to supplement the record. First, it offered a written version of the $1.6 million offer made under oath by Pirrello at the hearing. Second, it sought to add evidence that the School District and VNet had materially altered the proposed sales contract that had been the subject of the hearing four days after the trial court's order. Specifically, the parties deleted the closing date of November 2015 from the agreement and replaced it with a clause that gave VNet 2.5 years to close. Montessori also sought reconsideration of the court's approval of the private sale. The trial court denied Montessori's motions.

Montessori then appealed and filed a Concise Statement of Errors Complained of on Appeal. On December 4, 2015, the trial court issued a Rule Pa. R.A.P. 1925(a) opinion explaining its ruling.

The trial court stated that it refused to consider Montessori's offer of $1.6 million because it was done at the last minute and not memorialized in writing. Further, the offer was for the entire 7.9 acres, but only Lot 1, measuring 5.9 acres, was for sale because the School District wanted to retain the two adjacent one-acre lots as green space. Because the value of the two acres of green space was not known, Montessori's offer could not be compared to VNet's, which covered only Lot 1. The trial court found the sale to VNet to be in the public interest because it would return 5.9 acres to the tax rolls while preserving two acres as green space for recreational use. The trial court refused to consider VNet's financial ability to complete the sale or the School District's expenses prior to closing, deeming those to be collateral matters. The trial court rejected

7

Montessori's argument that approval of the sale was premature because of outstanding subdivision and zoning issues, holding that those issues were irrelevant to the statutory standards for a private sale of school district property.

The trial court explained that it denied Montessori's motion to supplement the record because the evidence it sought to add to the record, *i.e.*, the written documentation of Montessori's offer of $1.6 million, was too late. Finally, the trial court held that Montessori lacked standing but, in any case, it could not complain because it had been allowed to participate.

Montessori's appeal is now before this Court for our consideration.[8]

**Appeal**

On appeal, Montessori raises two issues. First, it argues that the trial court abused its discretion in not considering Montessori's substantially higher offer to purchase the Ridgefield property when it approved the sale to VNet. Second, it argues that the trial court abused its discretion in denying Montessori's motion to supplement the record when, four days after the trial court's approval of the sale, the School District materially changed the terms of the sale by deferring the closing for 2.5 years, which delay will cost the taxpayers an additional $250,000 in maintenance.

---

[8] In an appeal from an order granting a school district's petition for private sale of real estate, our standard of review is to determine whether the trial court committed an error of law or abuse of discretion. *In re Wilkinsburg School District*, 102 A.3d 574, 575 n.3 (Pa. Cmwlth. 2014). "An abuse of discretion is not merely an error in judgment." *Zauflik v. Pennsbury School District*, 72 A.3d 773, 797 (Pa. Cmwlth. 2013) (quoting *Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 686 A.2d 1, 5 (Pa. Super. 1996)). An abuse of discretion exists if the trial court renders a judgment that is plainly "unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will." *Commonwealth ex rel. Corbett v. Snyder*, 977 A.2d 28, 41 (Pa. Cmwlth. 2009).

8

For its part, the School District rejoins that the trial court in no way abused its discretion and that Montessori lacks standing to appeal the trial court's order.

## Analysis

We begin with a review of the applicable law. Section 707(3) of the Public School Code allows a school district to sell unused real property through a private sale subject to court approval.[9] Section 707 states, in relevant part, as follows:

> The board of school directors of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, by any of the following methods and subject to the following provisions:
>
> (1) By public auction, either on the premises to be sold or at places selected by the school board, after due notice by publication in one or more newspapers of general circulation published within the county or the school district and in the legal newspaper in said county, if any, once a week for three successive weeks before the date fixed for said sales, and by hand bills, one or more of which must be posted on the property proposed to be sold, and at least five of which must be posted at conspicuous places within the vicinity of said real estate. Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the sale.
>
> (2) Upon sealed bids requested by the school board, notice of the request for sealed bids to be given as provided in clause (1) of this section. Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the request for sealed bids.

---

[9] A school board's discretion in fulfilling its statutory responsibilities is not unfettered. "[C]ourts have authority to interfere when a school board's 'action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice.'" *Watts v. Manheim Township School District*, 121 A.3d 964, 972 (Pa. 2015) (quoting *Hibbs v. Arensberg*, 119 A. 727, 728 (Pa. 1923)).

9

(3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. *Approval of the court* shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, *that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale*, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered.

24 P.S. §7-707(1)-(3) (emphasis added).

In sum, school districts are expected to sell their unused property to the highest bidder. They are also expected to sell their unused property at a public auction, after extensive notice to the public, or by sealed bids. A private sale will be allowed so long as there is a public hearing before a trial court, which determines whether the price offered in the private sale is "fair and reasonable" and a "better price than could be obtained at public sale." 24 P.S. §7-707(3).

Nevertheless, a trial court "may properly approve a private sale, despite a higher offer, where the difference in price is small or *where other circumstances regarding the sale negotiated by the school board appeal to the [trial] court's sound discretion.*" *Swift v. Abington School District*, 297 A.2d 538, 540 (Pa. Cmwlth. 1972) (citation omitted). In *In re Petition of the Board of Public*

10

*Education of the School District of Pittsburgh*, 405 A.2d 556 (Pa. Cmwlth. 1979), this Court elaborated on what is meant by "other circumstances." We explained as follows:

> [Where a school board has approved a sale agreement,] we believe that equitable considerations should operate so as to favorably influence a court's approval of the petition for sale. One of those considerations is whether the interests of the public would be better served if the proposed sale were to be approved. *It is clear that it is the function of the [trial court] to ascertain whether the proposed sale is in the public interest.* As noted above, *the fact that a higher offer has been made is only one factor to be considered by the [trial court], and is not necessarily controlling with regard to the approval or disapproval of the sale*.

*Id*. at 558 (emphasis added).

Here, Montessori argues that the trial court abused its discretion by disregarding Montessori's offer because the difference in price was not small but substantial. In *Swift*, the difference was $500; here the difference is $500,000. Unlike VNet, which needs 2.5 years to close, Montessori could close in the fastest time possible. Montessori maintains that its offer will better serve the public interest because it will use the property as a school, which meets current zoning requirements. By contrast, VNet wants to use the property for commercial purposes, which is presently illegal. In addition to making the two acres of open space open to the public, Montessori will also make the playground and parking lot available. VNet made no such agreement.

The School District responds that the record shows that two real estate appraisers found VNet's offer fair, reasonable and better than what could be obtained in a public sale. The School District argues that zoning is a matter

11

committed to the Millcreek Township Supervisors under the Pennsylvania Municipalities Planning Code[10] and, thus, irrelevant.

The case law precedent is instructive on how a private sale petition should be handled where, as here, the hearing thereon produces a "better price." In *Petition of Whitemarsh Township School District*, 215 A.2d 644 (Pa. 1966), the school district sought approval of its private sale of property to Pat Sparango, Inc. Under the sales agreement, Sparango had the option to cancel if it could not obtain subdivision approval and connect to a sewer system. At the hearing, a third party offered a 5% higher purchase price. The trial court disapproved the sale to Sparango and directed the school board to consider the higher offer. Sparango appealed, and the Pennsylvania Supreme Court upheld the trial court's directive. In that regard, the Supreme Court observed that it was not the duty of the trial court "to determine the impact of this higher offer" or to conduct the sale. *Id*. at 645 (citing *McKees Rocks Borough School District Petition*, 62 A.2d 20 (Pa. 1948)). Rather, it was for the school board to negotiate the terms of the sale.

*Swift*, 297 A.2d 538, also involved a higher purchase offer made by a third party at the trial court hearing. In *Swift*, the school district petitioned the trial court to approve a private sale of its property for $35,000. An objector appeared at the hearing challenging the proposed use of the property and offered $35,500 on behalf of himself and four other individuals. The objector requested two days to obtain financing. The trial court approved the private sale as proposed, and the objector appealed. This Court affirmed because the trial court "had before it only the prospect of a future offer at a small advance in price." *Swift*, 297 A.2d at 540.

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

There are several reasons why this case is guided by *Whitemarsh* and not by *Swift*. Montessori made an offer at the trial court hearing that was approximately $500,000 higher than VNet's offer and could be closed in the fastest possible time. It was not "a future offer at a small advance in price." *Swift*, 297 A.2d at 540. *Whitemarsh* teaches that a valid offer can be made at the hearing, and Montessori's offer was specific as to amount, means of financing and time for closing. The fact that Montessori's offer was for all 7.9 acres rather than for the 5.9-acre Lot 1 is of no moment. The School District sought originally to dispose of all 7.9 acres. It later decided to retain two acres to assist VNet's commercial plans for the building by creating a buffer between VNet and the residential neighbors. No "buffer" is needed for Montessori's charter school. In any case, Montessori's offer included keeping the two acres available for recreation, while relieving the School District of its maintenance responsibility and cost. Moreover, even if the School District wishes to retain the two acres no matter the outcome, its sale of Lot 1 to VNet is still inconsistent with Section 707 of the Public School Code for the reasons discussed below.

Given Montessori's longstanding interest in purchasing the Ridgefield property and its offer in an amount substantially higher than that offered by VNet, there is no support for the trial court's finding that the private sale would realize a higher price than would be obtained at a public sale. Consistent with Section 707 of the Public School Code and *Whitemarsh*, Montessori's substantially higher offer should have stopped the proceedings. The trial court should have, at a minimum, disapproved the sale to VNet and ordered more negotiations between Montessori and the School District. The better course of action, in light of the School District's repeated refusal to negotiate with Montessori, would have been for the

13

trial court to order a public sale of either the entire Ridgefield property or Lot 1 since a public sale is the preferred way to do a sale of unused school property under Section 707 of the Public School Code.[11]

This Court has allowed "public interest" to be a factor in a trial court's evaluation of a private sale of school property. In *School District of Pittsburgh*, 405 A.2d 556, the school district petitioned for approval of the sale of its property to a hospital for $36,000. At the hearing, a neighboring church offered $41,400 for the property. The trial court disapproved the proposed sale to the hospital because of this higher offer. This Court reversed, holding that the public interest weighed in favor of the sale to the hospital, which had committed considerable resources in the reasonable expectation that the sale would be approved. The hospital needed the property for the "absolutely essential" purpose of securing parking for patients and employees. *Id*. at 559. Further, the hospital agreed to allow the church to use the parking lot in the evening and on weekends. *Id*.

*School District of Pittsburgh* is *sui generis*. It does not stand for the proposition that a school district can disregard a substantially higher price offered at the hearing by fashioning a "public interest" argument. "Public interest" is not a phrase that appears in Section 707 of the Public School Code. We have been directed by the General Assembly that a "better price than can be obtained at a public sale" is the overriding consideration in the approval of a private sale. 24 P.S. §7-707(3).

---

[11] Montessori acknowledges that "the trial court does not have authority to order the sale of Ridgefield to the [Montessori] charter school[.]" Montessori's Brief at 33. A trial court has authority to approve or disapprove a private sale, but it has "no power to negotiate for a better price, make a new sale or conduct an auction." *Swift*, 297 A.2d at 540.

14

In any case, the trial court's public interest findings do not withstand a close review. The trial court found that the anticipated $15,000 in annual tax revenue and having the School District keep two acres as green space for recreational use served the public interest. That may be so, but there were many other public interest considerations that were disregarded by the trial court. In applying the statutory standard, the trial court must consider all aspects of the sale, both positive and negative.

With respect to future tax revenue, the trial court overlooked evidence or lack of evidence relevant thereto. The future tax revenue was founded on the assumption that VNet would obtain the necessary rezoning, for which no application has been made.[12] Even if VNet obtained rezoning, the School District would have to collect $15,000 in real estate taxes for approximately 20 years just to recover its costs to maintain the property until VNet is able to close in 2.5 years. There is no way to guarantee that the 5.9 acres will be on the tax rolls in perpetuity, even assuming the restrictive covenant the School District placed in the deed is upheld as lawful. VNet will be free to sell the 5.9 acres to another "purely public charity," such as a private school, that may be eligible for a tax exemption that would take the property off the tax rolls. Finally, the School District will bear the expense of maintaining the two acres of land that it wants to retain in order to help VNet obtain its spot zoning. As an aside, it is difficult to argue that illegal spot zoning is in the public interest.

---

[12] In *School District of Pittsburgh*, 405 A.2d at 559, we noted that the hospital's proposed parking use satisfied the zoning ordinance.

15

In short, the trial court erred and abused its discretion in concluding that the proposed sale to VNet served the public interest by giving a lopsided view of the record in favor of the School District.

The trial court also erred and abused its discretion by refusing to supplement the record with the material changes made to the proposed private sale four days after its approval.[13] Deferring the closing for 2.5 years will cost the taxpayers $250,000 to maintain the empty Ridgefield Elementary School building and land, which has already sat empty for 2.5 years. Stated otherwise, the School District will spend $500,000 ($100,000 per year) to close the deal with VNet, reducing the realized value of the deal to $600,000. The School District's appraisers opined that $1.1 million was a fair price for the property now, not 2.5 years from now.

The trial court has the discretion to reopen the record to prevent a failure or miscarriage of justice. *Commonwealth v. Mathis*, 463 A.2d 1167, 1171 (Pa. Super. 1983). In its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, the trial court acknowledged the 2.5-year extension of the sale closing date but concluded that it was collateral to the issue before the trial court. We disagree. This extension impacts the overriding statutory standard, *i.e.*, whether VNet's price is fair and reasonable and better than what could be obtained at a public sale. The trial court abused its discretion in refusing to supplement the record.

---

[13] The School District acknowledges the amendments, for which approval was not sought. The School District asserts that the change was necessary because Montessori is discouraging VNet from completing the transaction.

Finally, we turn to the School District's argument that Montessori lacks standing to appeal the trial court's order. Although Montessori participated in the hearing, it was not granted intervention. Further, it contends that Montessori was not aggrieved by the approval of the sale to VNet. Montessori responds that the School District has not cited any cases holding that an objector who appeared at the private sale hearing lacks standing to appeal the trial court's order approving the private sale of real property under Section 707(3) of the Public School Code.[14]

We reject the School District's standing argument. Montessori filed a petition to intervene and fully participated in the hearing on the School District's petition, as acknowledged by the trial court. Standing to intervene in a hearing on

---

[14] In *Pittsburgh Palisades Park, LLC v. Commonwealth of Pennsylvania*, 888 A.2d 655 (Pa. 2005), the Pennsylvania Supreme Court explained the concept of standing as follows:

> [A] controversy is worthy of judicial review only if the individual initiating the legal action has been "aggrieved." This principle is based upon the practical reason that unless one has a legally sufficient interest in a matter, that is, is "aggrieved," the courts cannot be assured that there is a legitimate controversy.

> With respect to this requirement of being aggrieved, an individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. An interest is "substantial" if it is an interest in the resolution of the challenge which "surpasses the common interest of all citizens in procuring obedience to the law." Likewise, a "direct" interest mandates a showing that the matter complained of "caused harm to the party's interest," i.e., a causal connection between the harm and the violation of the law. Finally, an interest is "immediate" if the causal connection is not remote or speculative.

> The keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion. If the individual is not adversely affected in any way by the matter he seeks to challenge[, he] is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be "aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

*Id*. at 659-60 (internal citations and quotations omitted).

17

a petition to sell public property in a private sale should be broadly allowed; otherwise, there is no point to inviting the public to a hearing on a proposed private sale. Indeed, it was the unsuccessful offeror who took the appeal in *Swift*, 297 A.2d 538.

## Conclusion

For the foregoing reasons, the trial court's order is reversed and this case is remanded with instructions to the trial court to order a public sale pursuant to Section 707(1) or (2) of the Public School Code, 24 P.S. §7-707(1), (2), of either (1) all three lots comprising the Ridgefield property, or (2) Lot 1 if the School District wishes to retain ownership of the two one-acre lots adjacent to Lot 1.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Private Sale of : 
Property by the Millcreek Township : 
School District :
: No. 1922 C.D. 2015
Appeal of: Montessori Regional :
Charter School :

# **O R D E R**

AND NOW, this 20th day of July, 2016, the order of the Court of Common Pleas of Erie County entered September 10, 2015, in the above-captioned matter is hereby REVERSED, and this matter is REMANDED for the trial court to order a public sale of property pursuant to Section 707(1) or (2) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-707(1), (2), in accordance with the attached opinion.

Jurisdiction is relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Private Sale of : 
Property by the Millcreek Township : 
School District :
:
Appeal of: Montessori Regional : No. 1922 C.D. 2015
Charter School : Argued: April 12, 2016


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: July 20, 2016


Because the majority reverses the Court of Common Pleas of Erie County's (trial court's) approval of a private sale of property because it believes that it would be better for Millcreek Township School District (School District) to sell at a public sale that property as well as additional property, I respectfully dissent because the majority is substituting its discretion for that of the School District's, as well as ordering an improper remedy. I would affirm the trial court's approval of a private sale of the property because it satisfies Section 707 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-707(3).

The School District owns property located at 3227 Highland Road, Millcreek Township, Pennsylvania (Ridgefield Property), within the R-1 single-family residential zoning district. It is subdivided into three separate lots totaling approximately 7.9 acres. Lot 1 encompasses approximately 5.9 acres containing the

Ridgefield Elementary School building, a playground, a parking lot and open space. The other two lots are adjacent to Lot 1 and total approximately two acres of green space.

This appeal involves the trial court's approval of a private sale by the School District of Lot 1 only. After it rejected offers to purchase the entire Ridgefield Property, the School District sought to sell Lot 1 through a private sale to VNet Holdings, LLC (VNet) for $1.1 million, with the condition that the property is rezoned to permit commercial business. The School District desired to retain the two acres as buffer space and for recreational purposes. Because it was a private sale, the School District needed approval from the trial court that the sale of Lot 1 to VNet was "a fair and reasonable one and . . . a better price than could be obtained at public sale." 24 P.S. §7-707(3). Montessori Regional Charter School (Montessori) intervened, stating that it desired to purchase the entire Ridgefield Property, not just Lot 1, for $1.6 million.

After a hearing, the trial court approved the School District's petition because VNet was the only party to make an offer to exclusively purchase Lot 1 and, based on the affidavits and testimony of real estate experts, the price was fair and reasonable and a better price than could be obtained at a public sale. It also found Montessori's $1.6 million offer to purchase the entire property of no import because the only matter before it was whether the private sale of Lot 1 was fair and reasonable.

The majority finds that the trial court abused its discretion in approving the sale of Lot 1 and, not taking into consideration the $1.6 million offer to the School District for the purchase of the entire Ridgefield Property, inexplicably finds that "[t]he fact that Montessori's offer was for all 7.9 acres rather than 5.9 acres is of no moment." Majority Opinion at 13. Seemingly, the majority reasons that the difference in acreage can be dismissed because, at one point, the School District considered selling the entire Ridgefield Property and Montessori has agreed to permit the adjacent lots to be used for recreational purposes. If that were not enough, the majority remands and instructs the trial court to order a public sale of the entire Ridgefield Property through either the sealed bid process or public auction. *See* 24 P.S. §§7-707(1)&(2).

I dissent because our review is restricted to whether the trial court abused its discretion when it determined the School District's proposed sale of Lot 1 to VNet was "a fair and reasonable one and . . . a better price than could be obtained at public sale." 24 P.S. §7-707(3).[1] Rather than review what was before the trial court and before us, the approval of the sale of Lot 1, the majority finds that Montessori's fundamentally dissimilar offer for the entire Ridgefield Property is more advantageous for the School District and then goes on to instruct the School District to conduct a public sale of all of that property.

---

[1] "Under the abuse of discretion standard of review, abuse of discretion may not be found merely because the appellate court might have reached a different conclusion; rather, it requires a showing of manifest unreasonableness or partiality, prejudice, bias or ill will or such lack of support as to be clearly erroneous." *Marker v. Department of Transportation*, 677 A.2d 345, 347 (Pa. Cmwlth. 1996) (citing *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341 (Pa. 1995)).

While it may or may not be advantageous for the School District to sell all the property, that is not a decision for us to make but for the School District (i.e., its elected School Board) which is given the power to make those choices regarding which and how much of its property it desires to sell. *See* 24 P.S. §7-703. Simply, Section 707(3) of the Public School Code, 24 P.S. §7-707(3), only instills a court with the power of "approval" and its corollary refusal. As we explained in *Swift v. Abington School District*, 297 A.2d 538 (Pa. Cmwlth. 1972), "[t]he statute gives the court power to approve or disapprove a private sale made by the board. The statute gives the court no power to negotiate for a better price, make a new sale or conduct an auction." *Id.* at 540 (citing *McKees Rocks Borough School District Petition*, 62 A.2d 20 (Pa. 1948)).

Because this matter involves the School District's petition to privately sell Lot 1 to VNet, the trial court was only permitted to determine whether VNet's exclusive purchase of Lot 1 for $1.1 million complies with 24 P.S. §7-707(3). Any purported offer by Montessori to buy the entire Ridgefield Property is irrelevant when calculating the best price obtainable for Lot 1 only. Because VNet has offered two affidavits and multiple testimonies stating that the proposal complies with 24 P.S. §7-707(3) and because VNet is the only potential buyer to make an offer to exclusively purchase Lot 1, I would affirm the trial court's approval of the School District's private sale of that property.

_____
DAN PELLEGRINI, Senior Judge

DRP - 4