IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Private Sales of Former: | : |
| | : |
| Charles Carroll High School | : |
| Robert Fulton Elementary School | : |
| Germantown High School | : |
| Walter Smith Elementary School | : |
| Abigail Vare Elementary School | : |
| | : |
| Appeal of: The School District of | : No. 767 C.D. 2016 |
| Philadelphia | : Submitted: November 4, 2016 |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                        FILED: March 7, 2017

The Philadelphia School District (District) appeals from the Philadelphia County Common Pleas Court's (trial court) February 17, 2016 order[1] denying its Petition for Approval of Private Sales of Unused and Unnecessary Land and Buildings (Petition).[2] The issue before this Court is whether the trial court abused its discretion when it denied the Petition.

---

[1] The trial court's order was docketed on February 22, 2016.

[2] State Senator Anthony H. Williams and State Representative Jordan A. Harris submitted a joint *amicus* brief.

On January 18, 2017, Philadelphia City Councilman Kenyatta Johnson filed an untimely Application for Leave to File an *Amicus Curiae* Brief (*Amicus* Application). Pennsylvania Rule of Appellate Procedure 531(b)(4), requires that:

> An *amicus curiae* brief must be filed on or before the date of the filing of the party whose position as to affirmance or reversal the *amicus curiae* will support. If the *amicus curiae* will not support the

On October 14, 2015, the District filed the Petition seeking approval for the private sale of the following District school buildings which had closed at the conclusion of the June 2013 school year: Charles Carroll High School (Carroll), located at 2700 East Auburn Street; Robert Fulton Elementary School (Fulton), located at 60 East Haines Street; Germantown High School (Germantown), located at 5915-41 Germantown Avenue; Walter Smith Elementary School (Smith), located at 1900 Wharton Street; and Abigail Vare Elementary School (Vare), located at 1621 East Moyamensing Avenue (collectively, the Properties). The District averred in the Petition that the School Reform Commission (SRC) authorized the District to sell the Properties to The Concordia Group and its affiliates (Concordia) for $6,800,000.00, subject to the trial court's approval. The Agreement of Sale with Concordia (Sales Agreement) provided, in relevant part:

> As an accommodation to [Concordia], and for purposes of consideration recited in each of the deeds (and for transfer tax purposes), the [District] acknowledges **that** [**Concordia**], **for its purposes has allocated the Purchase Price** amongst [the Properties] as follows:

| Property | Allocated Purchase Price |
| --- | --- |
| [Carroll] | $700,000.00 |
| [Fulton] | $500,000.00 |
| [Germantown] | $100,000.00 |
| [Smith] | $3,100,000.00 |
| [Vare] | $2,400,000.00 |

---

position of any party, the *amicus curiae* brief must be filed on or before the date of the appellant's filing.

Pa.R.A.P. 531(b)(4). The District opposed the *Amicus* Application.

The District's brief was due on September 21, 2016 and was filed that day. The *Amicus* Application was not filed until almost four months later. Accordingly, the Court denies the Application.

> [Concordia] has entered into this Agreement based upon the Purchase Price of $6,800,000[.00], which is the aggregate Purchase Price for . . . the [P]roperties . . . [.]

Reproduced Record (R.R.) at 202a (emphasis added). The District attached to the Petition affidavits of appraisers Reaves C. Lukens, Jr. (Lukens), and Richard B. Owens (Owens) who "determined [*inter alia*] that . . . the price is fair and reasonable, [and] that the price is better than could be obtained at public sale[.]" R.R. at 19a; *see also* R.R. at 58a-59a.

On December 23, 2015, the trial court held a hearing on the Petition. At the hearing, the District argued that it complied with the statutory requirements of Section 707 of the Public School Code of 1949 (Public School Code)[3] since the Petition was filed by the SRC and signed by its chair, and it contained a full and complete description of the Properties, named the proposed purchaser, listed the amounts offered, and included appraiser affidavits averring that the price offered was better than could be obtained at a public sale. The District also presented evidence that it had given proper public notice of the hearing.

The District's Director of Real Property Management William D. Fox, Jr. (Fox), testified that the SRC determined at its September 18, 2014 meeting that the Properties were unused and unnecessary and, accordingly, should be listed for sale.[4] According to Fox, Lukens appraised the Properties as follows: Carroll – $1,100,000.00; Fulton - $500,000.00; Germantown - $500,000.00; Smith - $2,350,000.00; and, Vare - $2,250,000.00. Fox further stated that Owens appraised the Properties as follows: Carroll – $1,025,000.00; Fulton - $625,000.00; Germantown - $900,000.00; Smith - $2,100,000.00; and, Vare – $1,800,000.00.

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7-707.

[4] Fox disclosed that the District is responsible for maintaining and securing the Properties and that, since their closures, some of the Properties had been vandalized and copper piping had been stolen.

3

Fox explained that the District, working through Philadelphia Industrial Development Corporation (PIDC), put the Properties and numerous other District buildings up for sale.[5] PIDC advertised the Properties and the other District buildings on its website, and invited and received offers. PIDC also held open houses at the Properties. Fox disclosed that fifty potential buyers submitted bids on fifteen of the twenty listed buildings, and requests for best and final offers were sent to those fifty potential buyers. Twenty-five potential buyers submitted best and final offers for ten of the buildings. Concordia submitted a portfolio offer containing the five Properties (Portfolio Offer). Although other offers were made for some of the Properties, no offer was received for Carroll and Germantown received only a very low offer. Fox related:

> When we accepted this [P]ortfolio [O]ffer, it was a larger offer than any of the single offers we had on the building[s], and one building we didn't even have an offer on. It was recommended by PIDC, a neutral party, trying to be as transparent as possible, that the [District] administration wanted that and the SRC and quote, [sic] this was a good deal for the District.

R.R. at 118a. Fox also explained:

> The [Sales A]greement, a portfolio sale . . . is for five properties. It's either an all or nothing deal. When you sell five properties like this, is [sic] two of them might be considered the cream of the crop and two – one, we never had an offer on[,] and one, a very low offer. I'm talking a strictly business deal here in my position as director of real estate. We – when we sell properties – and the recommendation of PIDC also, we not only look at the price, we look at the reuse and the capability of the developer. A number of times, we might have an offer on the building and we don't have – in the evaluation, we don't

---

[5] "PIDC is a private, not-for-profit Pennsylvania corporation formed jointly in 1957 by the Greater Philadelphia Chamber of Commerce . . . and the City of Philadelphia (City) for the purpose of promoting economic development throughout the City." *Phila. Indus. Dev. Corp. v. Ali* (Pa. Cmwlth., No. 528 C.D. 2010, filed April 18, 2011), slip op. at 2.

4

have confidence that the developer is going to be able to do
what they say they're going to do.

R.R. at 120a.

Community members also appeared at the hearing in opposition to the Petition. Claudia Sherrod (Sherrod) and Philadelphia Councilman Kenyatta Johnson (Councilman Johnson) spoke on their behalf. Specifically, Sherrod objected to the Smith sale on the basis that the SRC should not have closed Smith because the neighborhood needs a school. Sherrod represented that there was a developer who was willing to purchase Smith and maintain it as a school. Councilman Johnson similarly testified that Smith's closure left the neighborhood without a school, and that Smith should be sold to a developer who would dedicate it to that use. Councilman Johnson proposed permitting the Properties' sale, but without Smith.

By order docketed February 22, 2016, the trial court denied the Petition. The District appealed to this Court.[6]

The District contends that the trial court erred and abused its discretion in denying the Petition because the District satisfied the requirements of the School

---

[6] The District's Notice of Appeal correctly stated that it appealed from the trial court to the Commonwealth Court. However, the Notice of Appeal was incorrectly filed with the Pennsylvania Superior Court which, *sua sponte*, transferred it to this Court.

> In an appeal from an order [ruling upon] a school district's petition for private sale of real estate, our standard of review is to determine whether the trial court committed an error of law or abuse of discretion. 'An abuse of discretion is not merely an error in judgment.' *Zauflik v. Pennsbury Sch*[.] *Dist*[.]*,* 72 A.3d 773, 797 (Pa. Cmwlth. 2013) (quoting *Christian v. P*[*a.*] *Fin*[.] *Responsibility Assigned Claims Plan, . . .* 686 A.2d 1, 5 ([Pa. Super.] 1996)). **An abuse of discretion exists if the trial court renders a judgment that is plainly 'unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will**.' *Commonwealth ex rel. Corbett v. Snyder,* 977 A.2d 28, 41 (Pa. Cmwlth. 2009).

*In re Millcreek Twp. Sch. Dist.*, 143 A.3d 1037, 1042 n.8 (Pa. Cmwlth. 2016) (citation omitted; emphasis added).

Code and established that the sale price was fair and reasonable, and better than could be obtained at a public sale. We agree.

Section 707(3) of the Public School Code permits a school district to sell unused real property by way of a private sale subject to court approval. Section 707 of the Public School Code states, in relevant part, as follows:

> The board of school directors of any district is hereby vested with the necessary power and authority to sell unused and unnecessary lands and buildings, by any of the following methods and subject to the following provisions:
>
> (1) By public auction, either on the premises to be sold or at places selected by the school board, after due notice . . . .
>
> (2) Upon sealed bids requested by the school board, notice of the request for sealed bids to be given as provided in clause (1) of this section. Terms and conditions of sale shall be fixed by the board in the motion or resolution authorizing the request for sealed bids.
>
> (3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, *that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale,* and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered.

6

24 P.S. § 7-707(1)-(3) (emphasis added).

This Court explained in *In re Millcreek Township School District*, 143 A.3d 1037 (Pa. Cmwlth. 2016):

> **In sum, school districts are expected to sell their unused property to the highest bidder.** They are also expected to sell their unused property at a public auction, after extensive notice to the public, or by sealed bids. **A private sale will be allowed so long as** there is a public hearing before a trial court, which determines whether **the price offered in the private sale is 'fair and reasonable' and a 'better price than could be obtained at public sale.'** 24 P.S. § 7-707(3).

*In re Millcreek*, 143 A.3d at 1044 (emphasis added).

In the instant matter, the trial court disapproved the Properties' sale because it concluded that the District would be undercompensated for some of the buildings based on the allocated purchase price assigned thereto, notwithstanding that the $6,800,000.00 **purchase price** for the Properties **exceeded** their **total appraised values**, one appraisal was $6,450,000.00 and the other appraisal was $6,700,000.00. Moreover, the $6,800,000.00 purchase price **exceeded the sum of the highest individual offers** for the Properties. Specifically, the trial court reasoned:

> In the instant case, [the District] complied with the requirements of the statute in that the SRC declared the [P]roperties to be unused and unnecessary, accepted the recommendation of the PIDC to sell the [P]roperties for a total of $6[,800,000.00], and that two (2) real estate appraisers opined that the prices were fair and reasonable and better than could be obtained at a public sale, and that it provided appropriate notice of the sale, advertised the sale.
>
> **However, evidence was also introduced that the purchase prices for several of the [P]roperties were well below the appraised value of said properties. Specifically, [Carroll] valued at, respectively, $1[,250,000.00] and $1[,100,000.00], with the purchase price of $700,000.00. This amounted to a sale price of fifty-six (56) or sixty-three (63) percent of its value.**

7

**[Germantown], valued at $500,000.00 and $900,000.00 respectively, was to be sold for $100,000.00. This amounted to a sale at twenty (20) or eleven (11) percent of its value.** Evidence was also introduced to show that some of the [other District] properties originally put up for sale had been taken back to be re-used as schools, and that other [P]roperties in this sale group had had other offers. Despite the fact that [the District] complied with the statutory requirements, **this court could not in good conscience allow the sale of such large properties for such a low value. As the deal was an 'all or nothing' deal, this court disapproved the sale.** Per statute and case law this is not, of course, to say that the [P]roperties cannot be sold again: merely that the court was unconvinced by the evidence shown that the affidavits and conclusions were credible, given the appraisers' own valuations and the evidence introduced.[7]

Trial Ct. Op. at 7-8 (emphasis added).

The trial court's analysis ignores the Sales Agreement provision which states that the purchaser, Concordia, "**for its purposes** . . . allocated the Purchase Price amongst [the Properties.]" R.R. at 202a (emphasis added). Accordingly, the "allocated" purchase prices do not necessarily reflect each individual property's actual purchase value. *Id*. Instead, the aforementioned provision in the Sales Agreement reveals that the trial court should have viewed the transaction as a whole, rather than using the artificially allocated valuations to invalidate the transaction.

The trial court also failed to acknowledge that despite the sale of Carroll and Germantown for a "low [allocated] value[,]" in the **very same transaction**, the contracted Smith allocated price **exceeded the appraised value** by almost **$1,000,000.00**, and the Vare allocated price **exceeded the** property's **appraised**

---

[7] The trial court did not find that the Properties' appraisals were unreliable or otherwise lacked credibility. To the contrary, the trial court found that the District had fully complied with all the statutory requirements. Moreover, Fox's testimony with respect to the facts surrounding the sale process was substantial evidence which evidenced that the requirements set forth in *In re Millcreek* were satisfied.

**value** by **several hundred thousand dollars**.[8]   These allocated prices more than made up for the "low value" received for Carroll and Germantown, as evidenced by the fact that the Portfolio Offer significantly exceeded the sum of the appraised values for the individual Properties.   Trial Ct. Op. at 8.   In addition, the uncontradicted evidence revealed that **no potential buyer made an offer** for Carroll and **only one potential buyer made a very low offer** for Germantown.  Given the undisputed, substantial record evidence presented at the hearing, it is clear that Concordia's offer was "fair and reasonable."   24 P.S. § 7-707(3).   The record evidence does not support the trial court's stated reason for denying the sale – "a low value" for "an 'all or nothing' deal."  Trial Ct. Op. at 8.  Accordingly, the trial court abused its discretion.

Further, although the Properties were to be sold by private sale, Fox testified that the District conducted the sale process similar to a public sale.  Through the PIDC, the District publicly listed the buildings for sale, held open houses and accepted bids.  The total Portfolio Offer exceeded the bids received for the individual Properties.[9]   Thus, there was substantial, uncontradicted evidence that the Portfolio Offer was a "better price than could be obtained at public sale[.]"  24 P.S. § 7-707(3).  Accordingly, we hold that the trial court abused its discretion by denying the Petition.[10]

---

[8]  The allocated Fulton sale price was roughly equivalent to that property's appraised value.

[9]  The trial court rejected the Petition over concerns regarding the "low value" of the sale prices allocated to the Carroll and Germantown properties.  However, although the PIDC advertised the Carroll and Germantown properties on its website and invited bids, Fox's testimony revealed no significant market interest in those properties. *See* Trial Ct. Op. at 8; R.R. at 121a.

[10]  The District also argues that public interest favors the Petition's approval.  We agree. Given that the District, which is in financial distress, will realize $6,800,000.00 (an amount exceeding the total appraised values of all of the Properties) for unused buildings, it is reasonable to conclude that the District and those it serves will benefit from the influx of funds as well as not continuing to be burdened by the expenditure of monies to maintain their upkeep.

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

In Re: Private Sales of Former:       :
                                          :

Charles Carroll High School        :
Robert Fulton Elementary School   :
Germantown High School          :
Walter Smith Elementary School   :
Abigail Vare Elementary School    :
                                          :

Appeal of:  The School District of   :    No. 767 C.D. 2016
Philadelphia                         :

<u>O R D E R</u>

AND  NOW,  this  7th  day  of  March,  2017,  the  Philadelphia  County Common Pleas Court's February 17, 2016 order is reversed.  The matter is remanded to the trial court with direction to grant the Philadelphia School District's Petition for Approval of Private Sales of Unused and Unnecessary Land and Buildings.

Philadelphia City Councilman Kenyatta Johnson's Application for Leave to File an *Amicus Curiae* Brief is denied.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge